STATE of Oklahoma ex rel. Esther Baldwin HUNTER, Plaintiff,

v.

C. R. DUNCAN, County Judge of Dewey County, State of Oklahoma, Defendant.

No. 36788.

Supreme Court of Oklahoma.

Sept. 27, 1955.

Sparks & Boatman, Woodward, Lynn Adams, Oklahoma City, for plaintiff.

Lowe & Sanchez, Oklahoma City, for defendant.

DAVISON, Justice.

This is an original proceeding in this court wherein the applicant or plaintiff, State of Oklahoma, ex rel. Esther Baldwin Hunter, seeks a writ prohibiting the defendant, C. R. Duncan, County Judge of Dewey County, State of Oklahoma from further proceeding, as a juvenile court, in a matter wherein the right to custody of the three children of the relator had theretofore been fixed. The facts are not in dispute.

In May of 1950, the Juvenile Court of Dewey County, Oklahoma, determined that the relator here, Esther Baldwin, a widow, did not have a fit and proper home for rearing her three daughters, Joan, Kathryn and Phyllis, and an order was entered determining said minors to be dependent and neglected and fixing their custody for the following three months. At the end of that period, their custody was awarded to Chester and Matilda Turner by an order which was later amended extending its effect until further order of the court. The children were still in their possession and custody when, on May 22, 1953, said court made and entered an order, finding that the Turners were residents of the State of Colorado and that the children were in

their custody in said latter state. It was then ordered,

> That this Court renounces jurisdiction in the said matter, and hereby confers jurisdiction on the Juvenile Division of the County Court of Montrose County, sitting in Montrose, Colorado, with full power to adjudicate matters as in the opinion of the said court will be just and equitable."

At the time the quoted order was made, the mother had married a Ray J. Hunter, had established her residence in the State of California and had returned to Dewey County, Oklahoma, for the purpose of obtaining a hearing as to her then fitness to be restored the custody of her children. She had appeared before the Juvenile Court for the purpose of fixing a date for such hearing. The purpose of her appearance was recognized by the following recitation made by the court in said order of May 22, 1953:

> "It also appears that the mother of the said children is attempting to get possession of the said children, and that since the children are in the State of Colorado, the Court finds that under the circumstances, it is practically impossible as well as impractical to attempt to adjust matters in the State of Oklahoma, without working a great injury as well as inconvenience to all parties concerned."

Subsequently and in consequence of the above-quoted order, the said Esther Baldwin Hunter and her husband, Ray J. Hunter, instituted an action in the district court of the county of residence of the Turners and said minors in the State of Colorado, seeking to obtain the custody of said children. The Turners filed a motion to dismiss because of the lack of jurisdiction, which said motion was denied and the defendants granted 20 days within which to plead. Nine days later, the Sheriff of Dewey County, Oklahoma, filed a motion in the Juvenile Court of that County seeking the vacation of its order of May 22, 1953, above referred to and quoted. The said Esther Baldwin Hunter then appeared specially and objected to the jurisdiction of the court. On January 3, 1955, the said Juvenile Court of said county sustained the motion filed by the sheriff and did vacate, the said order made and entered on May 22, 1953. The present proceeding has been filed seeking to prohibit further action of said court in the matter.

We are not here concerned with the merits of the litigation nor do we, in any manner, consider them except as may be necessary to determine the question of jurisdiction. A careful study of the record emphasizes several important facts.

The relator has sought to have a hearing on the merits in whatever forum was open to her, seeking to present the matter first to the Juvenile Court of Dewey County, Oklahoma, and, when that court declined to take jurisdiction, she followed the directions of the order of May 22, 1953 by filing the case in the Colorado Court. The Turners have not submitted themselves or the children to the jurisdiction of any court for an effective determination of the issues. We do not understand why, or by what right, the Sheriff of Dewey County filed the motion to vacate the order. But, be that as it may, the children are not within the jurisdiction of the Dewey County Court. The Turners are not amenable to any order of that court and the policy of the Colorado courts is that there is no obligation on their part to acknowledge or enforce any order of a foreign court under the circumstances. Hodgen v. Byrne, 105 Colo. 410, 98 P.2d 1000. In this jurisdiction as well as the majority of other jurisdictions the same rule has been adopted and followed.

In the recent case of In re McMenamin, Okl., 277 P.2d 120, it was concluded that although the Pennsylvania Court, where the original order regarding custody had been made, had modified that order the removal of the child and its mother "to Oklahoma was lawful." With the child lawfully domiciled in this latter state at the time of the trial, there was no obstacle to the trial courts' (in Oklahoma) rendition of a valid judgment in accord with the best interests and welfare of the child."

One of the early authors in the Harvard Law Review (24 Harv.L.Rev. 144), commenting on the apparent conflict of jurisdiction in such situations said,

"It was recently decided that where the decree gave the custody of the children to the mother, a modification of it was proper after she had lived with them for several years in a foreign country, intending to make it her home. Morrill v. Morrill, [83 Conn. 479] 77 A. 1. The mother in such a case is in the position of a guardian appointed by the court, over whom it has a continuing jurisdiction. In some cases the exercise of this jurisdiction may be proper even though another court is able to act in the matter. But if another court has taken jurisdiction, it would seem that the first should not interfere; for, owing to the children's absence, it is no longer the best judge of their welfare, and has no power to make its orders effective."

In the case at bar, the Dewey County Court had denied jurisdiction which was probably proper for the orderly administration of the law. Thereafter, the Colorado Court assumed jurisdiction and had before it all the interested parties as well as jurisdiction over the children.

■ It should be here further noted that all the proceedings herein involved were had under the provisions of Chapter 5, title 10, § 101 et seq., of O.S.1951, wherein the state is vitally interested because of society in general and the welfare of the children in particular. In such proceedings, the state is regarded as in the position of parens patriae. The rules of law applicable thereto are not necessarily the same as in questions of custody ancillary to divorce proceedings. Although the welfare of the children is the controlling factor in both types of cases, the divorce cases must also consider and determine the personal rights of the parents as parties litigant. In one the emphasis is on the parent and child relationship. In the other as here, it is on the state-child relationship. Under such circumstances, the jurisdiction is in the Colorado courts and the Oklahoma court should be restrained from proceeding further.

■ When an inferior tribunal is proceeding in a case wherein it lacks jurisdiction, prohibition is the proper remedy to prevent it. Mills v. District Court of Lincoln County, 187 Okl. 247, 102 P.2d 589; State ex rel. Gaines v. Beaver, 196 Okl. 560, 166 P.2d 776.

Writ granted.

WILLIAMS, V. C. J., and CORN, HALLEY, BLACKBIRD and JACKSON, JJ., concur.