In the Matter of W.S., Jr., L.C.C., J.H.C., R.L.C., and S.K.C., Children under eighteen (18) years of age.

SANDRA MAY D., Appellant,

v.

STATE of Oklahoma ex rel. DEPARTMENT OF INSTITUTIONS, SOCIAL AND REHABILITATIVE SERVICES, Appellee.

No. 51398.

Supreme Court of Oklahoma.

Nov. 27, 1979.

John M. McKindles, Legal Aid of Western Oklahoma, Oklahoma City, for appellant.

Andrew M. Coats, Dist. Atty., Wesley C. Fredenburg, Asst. Dist. Atty., Oklahoma City, for appellee.

WILLIAMS, Justice.

The issue in this appeal concerns the sufficiency of the record before this Court with regard to the standards of conduct by which appellant's performance as a parent would be judged by the trial court when it determined her four children to be dependent and neglected and later when it terminated her parental rights and also with regard to appellant being informed as to the standards she should attain.[1]

On January 10, 1977 Supplemental Petition "B" was filed. It alleged the children had been adjudged dependent and neglected on November 15, 1974, that the parental rights of the respective fathers had been terminated on January 10, 1975, and that:

> [T]he mother of said children has failed to give the children the parental care or protection necessary for their physical or mental health; that [she] has failed to show that the conditions which resulted in the adjudication of said children have been corrected in that; she continues to be unable to provide a stable home environment for said children due to her frequent moves, changes of employment and unsatisfactory living conditions. That it is necessary to terminate the parental rights of the mother of said children.
> . . . [2]

A hearing on supplemental petition "B" was held on August 15, 1977. The appellant and her attorney attended. The testimony of a case worker presented at this hearing indicates she had specifically recommended to appellant sometime after the April, 1976 hearing that appellant not move from place to place, that she secure larger living accommodations and steady employment in order to stabilize herself and family. No mention is contained in the case worker's testimony of any standards of conduct relied upon by the court in adjudicating appellant's children to be dependent and

1. The children, one by one father and four by another had been placed in emergency custody by police on March 30, 1972 because of a home environment allegedly detrimental to their health. On April 3, 1972, the State filed a petition asking temporary custody be placed with the Department of Institutions, Social and Rehabilitative Services (Department) and alleging that home conditions were detrimental to the health and well being of the children. The trial court entered an order that same day placing the children in the temporary custody of Department.

2. The filing of supplemental petition "B" appears to be the first effort specifically directed at determining other than on a temporary basis any custodial rights of the mother.

The record indicates a hearing had been held November 15, 1974 at which, in the presence of the appellant, the children were adjudicated to be dependent and neglected in the proceeding against the fathers. No transcript of any evidence then received by the trial court has been made available to us.

On December 24, 1974, the state filed Supplemental Petition "A" seeking termination of the respective fathers' parental rights. Such supplemental petition "A" asked only that the children be brought before the trial court "as dependent and neglected children" and that the parental rights of the fathers be terminated. The fathers' parental rights were ordered terminated in January, 1975 as later recited in supplemental petition "B", supra.

A custodial hearing was commenced on May 27, 1975 and completed on July 28, 1975 and custody of the children was returned to the appellant, subject to supervision of Department. But on April 28, 1976, another custodial disposition hearing attended by the appellant and her attorney was held. The order entered after that hearing recites that "the Court after reviewing the file and hearing sworn testimony of two witnesses, finds that said children should remain wards of the Court as dependent-neglected children". It further ordered custody of the children be placed with Department. Other than a copy each of the court's minute and this order the record contains no suggestion of the nature of the evidence presented at that hearing. Later the case was continued to November 29, 1976 for review and "possible termination".

The order of November 29, 1976 recited both a finding and in a separate paragraph an adjudication that the four children came "within the purview of the Juvenile Code as ___." and they were made wards of the trial court. It was ordered that the four younger (the C.) children would remain with the Department and that the older one should remain in the custody of his "mother under the supervision of the Department. . . ." until further order of the court.

neglected or in terminating her parental rights. The trial court at the conclusion of the taking of testimony including his examination of the two witnesses, the appellant and the social worker assigned to the case, found the allegations contained in supplemental petition "B" to be true and ordered that appellant's parental rights be terminated, thereby precipitating this appeal. (To be noted is the fact that the older child, W.S., Jr. had reached the age of eighteen prior to the hearing on August 15, 1977 and the trial court ordered this proceeding dismissed as to him.)

Appellant contends that the judgment terminating her parental rights is not supported by evidence and is contrary to law. We agree.

The allegations contained in supplemental petition "B" are the only indication in the record of what the conduct of appellant was that either resulted in the adjudication that appellant's children were dependent and neglected and that she should be stripped of her parental rights or that she had any notice between the times of the April 28, 1976 and August 15, 1977 hearings of any conduct on her part as to which the trial court expected her to effect an improvement.

Moreover, the evidence showed appellant had married her present husband, he was employed full-time, they had rented a four-bedroom house, and purchased and paid cash for new furniture, she had quit working outside the home except for helping her husband in his work to earn money to pay for new carpeting for the home, that they were renting the home with part of the rental payments to apply on purchase of the place if and when they should decide to buy it, that the husband was willing for appellant to bring the children into the home and that his earnings were ample to support the family and that she would stay home with the children if awarded their custody.

In the case of *Matter of Sherol A.S.*, 581 P.2d 884, 888 (Okl.1978) we said:

It is true that in recent months this Court has been divided on many aspects of our involuntary termination procedure. There is, however, one important point on which we all agree: The purpose of termination is to protect children from HARM suffered by reason of either neglect or the intentional actions of their parents. Termination is not a means by which the State of Oklahoma, through its juvenile courts and the Department, can exact conformity from its citizen-parents through the imposition of an "acceptable" common value system and "lifestyle". There is no authority in our Juvenile Code which allows the State to interfere with the family relationship where *harm* to the children is not involved. [citing *10 O.S.1971 § 1130(c)(3)].* . . . The fundamental integrity of the family unit, which has found protection in the Due Process and Equal Protection clauses of the Fourteenth Amendment and the Ninth Amendment, is subject to intrusion and dismemberment by the State only where a "compelling" State interest arises and protecting the child from *harm* is the requisite State interest. (Citations omitted).

In *Matter of J.F.C.*, 577 P.2d 1300, 1302, 1303 (Okl.1978), also a termination of parental rights case, this Court stated:

As our statute operates in the case at bar there must first have been an adjudication that a child was dependent or neglected. Then, the parent must have been given a period of six months in which to correct the condition. The condition must have been such that it amounted to a failure or omission of necessary parental care or protection or conduct detrimental to the child's welfare. Finally, there must have been a finding that termination of parental rights was necessary to protect the child.

A parent in Oklahoma has six months' fair warning of the prohibited or required conduct. Termination cannot occur under our statute unless there has been failure to correct the conduct which led to adjudication of the child as dependent or neglected. It is only when the parent fails to correct the very conditions found in the dependency hearing that termination for these reasons may result.

\*     \*     \*     \*     \*     \*

. . . The adjudication by the Court can in itself be looked upon as a set of standards which can be utilized at the hearing in the determination of parental rights. Thus, just as a parent has fair warning of the sanction, the parent also is provided with a standard by which to guide his conduct.

\* \* \* \* \* \*

. . . In *Matter of Moore* [Okl., 558 P.2d 371] supra, we said the burden of persuasion as to change of conditions was upon the parent after the allegations of the petition to terminate were sustained. To sustain the pleading to terminate trial court must apply the standards of conduct which emerge from the adjudicatory stage. To be affirmed on appeal the record, likewise, must show this Court what those Standards were.

. . . [W]e can find no pleadings or evidence from which we can ascertain what standards evolved from the prior adjudication upon which a standard of conduct could have been set for the present termination of appellant's parental rights. For this reason we are reversing trial court's order.

As mentioned previously the record in this case is devoid of any reference to conditions or standards of conduct actually relied upon by the court when it determined the children herein were dependent and neglected. We do not choose to infer from the allegations of supplemental petition "B", supra, and the case worker's recommendations what these standards may have been for neither indicate with certainty the actual standards used by the trial court.

The language of *J.F.C.* is clear. The record on appeal must exemplify the standards of conduct compared to which appellant's conduct fell short as a result of which the adjudication of dependent and neglected status and later termination occurred.

Likewise appellant was entitled to notice, that is to be advised in advance as to the standard of conduct the court expected her to attain. See language above quoted from *J.F.C. Lebus v. Carden, J.*, 583 P.2d

503 (Okl.1978). As argued by appellant we determine it was an abuse of discretion to terminate the parental rights of the mother in the circumstances of this case. *Grattan v. Tillman,* 323 P.2d 982 (Okl.1958) and *J.F.C.*, supra. Therefore we reverse the trial court's judgment herein challenged.

In view of our holding herein we find it unnecessary to discuss any other contentions raised.

Reversed for further proceedings not inconsistent with this opinion.

All Justices concur.