637 P.2d 66 (1981)
In the Matter of C. G., An Alleged Dependent and Neglected Child.
No. 53281.
Supreme Court of Oklahoma.
November 10, 1981.
Tom A. Lucas, Norman, for appellant.
Kay E. Huff, Dist. Atty., Ross N. Lillard, III, Asst. Dist. Atty., Norman, for appellee State.
David K. McCurdy, Norman, for appellee Child.
*67 OPALA, Justice.
The issue dispositive of this appeal is whether the order terminating a parental bond must be reversed because of antecedent failure to prescribe some norms of conduct to which the parent was expected to conform. We answer in the affirmative.
The order under review terminates the father's status vis-a-vis his son Chris. The mother of Chris  then divorced from his father  petitioned to determine her son to stand in a deprived status. Chris, as well as his father, was then living in the home of his maternal grandparents. The petition alleged that the father was unable "to provide proper care and supervision and protection necessary to the physical and mental health" of the child.
Following two different hearings the child was placed with the Department of Institutions, Social and Rehabilitative Services [Department].[1] The father willingly underwent extensive treatment to determine the cause of his substandard behavior. His condition was diagnosed as schizophrenia which was thought to be controllable by a combination of diet, medication and psychotherapy. Before the cause was reached for trial, the mother was killed in an automobile accident.
The father waived legal counsel and jury trial. The cause, submitted on a stipulation of facts, culminated in a decision adjudicating *68 the status of Chris as that of a deprived child. Three months later Chris was placed with his maternal grandparents, but custody remained in the Department. The father enjoyed access for visitation which was suspended when reports from the social worker and the child's psychologist indicated the contact had some detrimental effect on the child.
In March 1978 the Department recommended to the court that permanent custody be given to the maternal grandparents and that the Department be relieved of custody. A request for parental bond termination was first raised by petition filed shortly thereafter. The court sustained a demurrer to that petition. An amended petition that followed was dismissed.
The next proceeding was on a motion to terminate the parental bond. It took place in October 1978, fourteen months after the deprived-status adjudication, and was continued until December to enable the father to undergo further psychological treatment.[2] The motion alleged the father failed to correct the conditions which caused the child's status to be termed deprived. In that proceeding separate legal counsel represented the father and child. On two earlier occasions the father had been directed by the court to submit to a psychological evaluation. When he failed to do so, the court set the October hearing date at which testimony was taken from the father and a letter from his psychiatrist was admitted in evidence. The December hearing resulted in the decision under review.
Our review is limited to the errors raised in the new trial motion which related to the status termination phase of the case. Errors affecting the deprived-status proceedings are clearly beyond our reach in this appeal. That decision stands unchallenged and is now final.
The father contends the court erred in failing to determine the nature and extent of his emotional or mental disabilities  the basis of the deprived-status litigation  before terminating the parental bond. He urges that, although he was not under legal disability, he was nonetheless incapable of aiding in his defense by the nature and the severity of his mental health problems. This issue need not be reached. We find that the trial court's decision must be reversed for its antecedent failure to prescribe norms of parental conduct for the father.

I.

MINIMUM STANDARDS OF DUE PROCESS FOR PRE-TERMINATION NOTICE AND OPPORTUNITY FOR PARENTAL CONDUCT AMELIORATION
Due process inexorably commands notice which reasonably informs a person that his legally-protected interest may be adversely affected.[3] Any parent whose child is adjudged to occupy a legal status termed "deprived" must be judicially advised of those parental conduct norms which he is expected to follow or eschew to recapture a legally unencumbered standing as a parent.[4] The very purpose of these norms is to afford the parent an opportunity to ameliorate his condition and to effectively defend against termination efforts. Judicial notice cannot depend on inferences to be gathered from reports of social workers or of medical doctors. It can only be found in written judicially-prescribed norms of conduct to which the parent is expected *69 to conform. Once these norms have been fashioned with clarity, the parent is entitled to the minimum statutory period of three months to conform.[5]
Judicial clarity in the prescribed norms of parental conduct is essential to the preservation of the procedural safeguards mandated by state and federal due process. A "fair warning" requirement breathes life into these fundamental-law guarantees, while lack of specificity makes them meaningless.
The record here is utterly devoid of any judicially-prescribed norms of conduct to which the father was required to conform in order to avoid a loss of further impairment of his status. The proceedings challenged here simply fail to give a person of ordinary intelligence  and particularly someone with the father's psychological impediments  a reasonable opportunity to know what was expected of him. The record in suit reveals no more than a stipulation that the child stood in a deprived status.
Norms for parental conduct are designed to advise parents of what is expected of them qua parents and to guide them in avoiding patterns or a level of behavior that may trigger official intervention. Without knowledge of the expected norms of conduct  as balanced by community norms and by the socio-economic milieu of the parent  a parent would be unable to set in motion an effort of compliance with society's expectations, i.e., to rectify the problems which caused the child to become the subject of a public-law proceeding and to remove all residue of a clouded status. This approach is clearly consistent with the general policy of the law against needless family disruption.
Notice which may be implicit in the adjudication  that one's general substandard parental behavior brought about the loss of the custodial rights  is not enough because it is of little utility in guiding a parent toward the expected conduct. A broad, amorphous concept of parental unfitness cannot be said to put one on notice of those conditions in one's present lifestyle in which the law requires one to make a change, nor does it give one a factual basis for an earnest effort at conduct modification.
By not being adequately apprised of the parental conduct expected of him the father was denied the opportunity of correcting the conditions that led to his child's deprived-status adjudication.

II.

STATE DUE PROCESS REQUIREMENTS GOVERNING THE INTERPLAY OF THE BURDENS OF PERSUASION AND STANDARDS OF REVIEW IN § 1130 PUBLIC-LAW PROCEEDINGS FOR SEVERANCE OF PARENTAL BOND
Since the order in suit cannot stand and new proceedings may follow on remand, we must reach the father's other contention that status-termination decisions under § 1130[6] should rest on clear-and-convincing evidence. The burden of persuasion and standard of review used in extant case law of this state has followed that which is traditional in equity  the clear weight of the evidence.[7] We note considerable diversity in the approach used in litigation over parental rights.[8]
The clear-and-convincing standard is traditionally applied in equity for allocation of *70 the risk of error when important interests are at stake. We recently adopted this standard in a private-law contest for a judicial declaration that a child could be adopted without his father's consent. In the Matter of Todd, H.[9]Todd followed closely the rationale of Addington v. Texas.[10] There the U.S. Supreme Court held that in a mental health commitment proceeding due process required a higher standard than preponderance of the evidence but one that is less demanding than that beyond a reasonable doubt.
Although the precise issue before us remains unsettled by federal case law,[11] we believe that a § 1130 parental-status termination calls for such an extreme public-law redress that due process under Art. 2 § 7, Okl.Const. requires of the state proof more substantial than that afforded by the standard of the clear weight of the evidence. The law's policy must demonstrate the very same solicitude in guarding against a mistaken parental-bond severance as it does in its vigilant protection against wrongful mental health commitments. The clear-and-convincing standard balances the parents' fundamental freedom from family disruption with the state's duty to protect children within its borders. It places an *71 appropriately heavy burden upon the § 1130 petitioner (termination-seeking party) to overcome the law's policy which identifies the child's best interest with that of its natural parents. We hence hold that in § 1130 litigation the termination-seeking claimant must prove by clear-and-convincing evidence parental potential for harm to the child by abuse or neglect.[12]
Whenever a parent may properly be called upon to bear the burden of showing compliance with the previously prescribed norms of parental conduct,[13] he/she need not be held to the same standard as the termination-seeking claimant. Public policy mandates as much concern in guarding against error at this stage as it does when a § 1130 parental termination status is sought. The risk of mistake remains balanced in favor of the parent who may meet the onus cast on him by the "clear-weight-of-the-evidence" rather than the clear-and-convincing standard.[14]
Our imposition of the "clear and convincing" standard upon petitioners in parental *72 status termination cases[15]  pronounced in this opinion  shall operate prospectively[16] to apply with effect to this case and those cases in which the petition for such relief is filed after the effective date of this opinion.[17]
Reversed.
IRWIN, C.J., BARNES, V.C.J., and HODGES, LAVENDER, DOOLIN and HARGRAVE, JJ., concur.
SIMMS, J., concurring specially.
SIMMS, Justice, specially concurring:
While I concur in the reversal of this judgment, I must take issue with the majority's "creation" of the standard of clear and convincing proof to be borne by petitioner in this case, and its declaration that the standard will be required prospectively. That standard has been required in actions such as this since Matter of Adoption of Darren Todd H., Okl., 615 P.2d 287 (1980) was promulgated by this Court. Today's opinion does not alter that fact.
I quote from that opinion:
"We have repeatedly recognized that the right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the federal and state constitutions. See, e.g., J.V. v. State, Dept. of Institutions, Soc. and Rehab. Services, Okl., 572 P.2d 1283 (1977). The fundamental nature of parental rights `requires that the full panoply of procedural safeguards must be applied' before a parent may be deprived of that right. Matter of Chad S., Okl., 580 P.2d 983, 985 (1978). Assessing this situation under the rationale of Addington, we are convinced that because a declaration of a child's eligibility for adoption without parental consent effects a termination of parental rights, the magnitude of the rights involved requires proof which is clear and convincing. We adopt that standard of proof prospectively and overrule previous holdings to the contrary." at 290.
NOTES
[1] The Department of Institutions, Social and Rehabilitative Services is now known as the Department of Human Services. 56 O.S.Supp. 1980 § 162.1.
[2] It is unclear from the record whether the grandparents as custodians or the Department was the moving party in the termination proceeding.
[3] The terms of Art. 2 § 7, Okl.Const. provide: "No person shall be deprived of life, liberty, or property, without due process of law." Application of Tubbs, Okl., 620 P.2d 384, 385-386 [1980]; In re D.B.W., Okl., 616 P.2d 1149, 1154 [1980]; Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313-315, 70 S.Ct. 652, 657, 94 L.Ed. 865, 872-874 [1949]; Bomford v. Socony Mobil Oil Co., Okl., 440 P.2d 713, 719 [1968].
[4] Matter of Baby Girl Williams, Okl., 602 P.2d 1036, 1039-1040 [1979]; Matter of JFC, Okl., 577 P.2d 1300, 1303 [1978]; Matter of Moore, Okl., 558 P.2d 371, 373-374 [1976]; Matter of W.S., Okl., 603 P.2d 1122, 1125 [1979]; Matter of Lyni P., 626 P.2d 864, 866 [1981].
[5] 10 O.S.Supp. 1977 § 1130(A)(3).
[6] 10 O.S.Supp. 1977 § 1130.
[7] Matter of J.F.C., supra note 4 at 1303.
[8] Under the Juvenile Code, 10 O.S.Supp. 1979 § 1101 et seq., in which only public rights are in litigation, both in deprived-status contest, as well as in § 1130 parental-status termination proceedings, the burden of persuasion is cast on the petitioner to prove its case in chief by the clear weight of the evidence. In re Davis, 206 Okl. 405, 244 P.2d 555, 559 [1952]; McNatt v. State, Okl., 330 P.2d 600, 601 [1958]; In re Pulliam, Okl., 369 P.2d 646, 649 [1962].

In contests over parental rights in private law, varying standards are applicable: (1) For the declaration of a child's eligibility to be adopted without parental consent, "clear and convincing" standard is now used. In the Matter of Todd, H., infra note 9. (2) For divorce actions generally, a presumption of legitimacy must be overcome by "clear, satisfying and conclusive" evidence or "strong and conclusive proof". Austin v. Austin, Okl., 418 P.2d 347, 348 [1966]; Stone v. Stone, 193 Okl. 458, 145 P.2d 212, 213 [1944]. It is thus apparent that case law exacts a much higher standard in divorce-related contests for severance of the parental bond than in adoption-related attempts to dispense with parental consent. (3) In paternity proceedings, the common-law preponderance-of-the-evidence standard is used. Greenback v. State, 169 Okl. 616, 36 P.2d 882 [1934]; Roberts v. State, 205 Okl. 632, 240 P.2d 104 [1952]; Buck v. State, 206 Okl. 71, 241 P.2d 191 [1952]. (4) Private-law contests over parental bond severance are litigable under 10 O.S. 1971 § 9. Litigation over parental status termination is subject of a dichotomous division into § 9 private-law and § 1130 public-law remedies. Since § 9 proceedings are in equity, the "clear weight of the evidence" would apply.
Proceedings under the so-called "juvenile law"  from the very inception of the concept in 1899  were intended to serve public rights only. State v. Duncan, Okl., 288 P.2d 388, 391 [1955]; Bingham v. Bingham, Okl., 366 P.2d 396, 398 [1961]; Application of Gault, 387 U.S. 1, 14-16, 87 S.Ct. 1428, 1437-1438, 18 L.Ed.2d 527, 538-540 [1967]. In these proceedings, the emphasis is on the trilogy of interests of the child, the parent and the state. Private rights to custody remain cognizable in equity, which, as before the advent of juvenile law, continues to protect the person, as well as the property interests, of minors. Application of Gault, supra.
[9] Okl., 615 P.2d 287 [1980].
[10] 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 [1979]. In Addington the preponderance-of-the-evidence standard came to be rejected as unfairly requiring the individual to share the risk of error when possible injury to him was significantly greater than any possible harm to the state. The traditional "reasonable doubt" standard in criminal cases was also disapproved because of the uncertainties of psychiatric diagnosis which may impose a burden the state cannot meet. The Court distinguished mental health commitment procedures from criminal and delinquency proceedings in several respects. Due process  in the context of mental health commitment proceedings  was said to require a standard of proof which is equal to, or greater than, clear and convincing. When the common-law standard of "preponderance of the evidence" is used, the burden of error in the fact-finding process is shared equally. This is so because each party having the affirmative must show that its proof is more probable than that of the party having to negate it. In criminal and juvenile delinquency proceedings  where interests at stake are of transcending value  this standard would result in a greater risk to innocent persons of losing their freedom. The margin of error is significantly reduced in favor of individual rights when the burden of persuasion that is placed on the state in criminal cases requires it to meet the stricter common-law standard of proving the case "beyond a reasonable doubt". Speiser v. Randall, 357 U.S. 513, 525-526, 78 S.Ct. 1332, 1341-1342, 2 L.Ed.2d 1460, 1472-1473 [1958]; In re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, 1075-1076, 25 L.Ed.2d 368, 378-379 [1970].

In deprived-status proceedings, the potential of the parent to inflict harm upon the child is weighed against the other interests at stake  the parents' interest in freedom from familial disruption, the child's right to protection and the state's duty to provide it. The appropriateness or desirability of applying a clear-and-convincing evidence standard to deprived-status proceedings has never been dealt with in our case law. See Dependency Proceedings: What Standards of Proof? An Argument Against the Standard of "Clear and Convincing", 14 San Diego L.R. 1155 [1977].
[11] Doe v. Delaware, 450 U.S. 382, 392, 101 S.Ct. 1495, 1502, 67 L.Ed.2d 312, 321 [1981] (dissent by Stevens, J.).
[12] Matter of Sherol A.S., Okl., 581 P.2d 884, 888 [1978]. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. Bland v. Mentor, 63 Wash.2d 150, 385 P.2d 727, 730 [1963]; Waks v. State, 375 P.2d 136, 138 [Alaska 1962]; In re Shirk's Estate, 194 Kan. 424, 399 P.2d 850, 856 [1965]; Sheets v. B & B Personnel Systems of Oregon, Inc., 475 P.2d 968, 972 [Ore. 1970]; Dahman v. Ford Leasing Development Company, 492 P.2d 875, 877 [Colo. App. 1972].
[13] Matter of Moore, Okl., supra note 4; Matter of J.F.C., supra note 4.
[14] By the interplay of burdens in public-law litigation a heavier onus may be allocated to the state when it seeks to deprive an individual of an important interest than to the individual who may have the burden of sustaining the affirmative on some other aspect of proof in the same case. United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1164-1165 [1967]; Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1205-1206 [1967]; Allen v. Rhay, 431 F.2d 1160, 1163 [9th Cir.1970]. In Wade, a criminal prosecution for bank robbery, the defendant sought the exclusion of courtroom identification by a witness because of the absence of counsel at the pre-trial lineup. The Court held that in-court identification could not be excluded if the government established by clear and convincing evidence that it was based upon observations of the suspect other than at the tainted pre-trial lineup. In Stovall and Allen, it was held that a criminal defendant who claims denial of due process in a tainted pre-trial lineup has the burden to show by preponderance of the evidence  that the "confrontation * * * was so unnecessarily suggestive and conducive to mistaken identity that he was deprived of due process of law." Stovall, supra, 388 U.S. at 301-302, 87 S.Ct. 1967 at 1972, 18 L.Ed.2d at 1206; Allen, 431 F.2d at 1163.

In a collateral attack on a criminal conviction, the prisoner may be constitutionally required to sustain a heavier burden than the state government. The U.S. Supreme Court recently upheld the provisions of 28 U.S.C. § 2254(d) which, in federal habeas corpus proceedings, afford prior state-court factual determinations a presumption of correctness by placing the burden on the prisoner to establish, by convincing proof, that these factual determinations were erroneous. Sumner v. Mata, 449 U.S. 764, 101 S.Ct. 764, 66 L.Ed.2d 722 [1981]. Traditionally, a defendant in a criminal proceeding is allocated the burden of raising the issue of illegality in obtaining the evidence he seeks to suppress. Fed.R.Crim.P., Rule 41(e). He must go forward with proof showing "a relationship between the unlawful police activity and the evidence to which objection is made." Nardone v. U.S., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 [1939]. Once the issue is raised, the state bears the burden of convincing the court that the evidence it seeks to introduce at a criminal trial was not obtained by it in violation of a defendant's constitutional rights, U.S. v. Schipani, 289 F. Supp. 43 [E.D.N.Y. 1968]. The prosecution must go forward to show that the unlawful taint had been dissipated or that the proof had an independent origin. Nardone v. U.S., supra. The party seeking to suppress the evidence  in states which still follow the old case law  bears the burden of persuasion on the illegality of a search issue, except on the issue of waiver or consent, where the burden is on the prosecution. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 [1968]. The emerging view is that: (a) in warrant-authorized searches, the accused bears the burden of persuasion, while the state bears this burden when the search was warrantless. Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed. 627 [1976].
At suppression hearings involving the voluntariness of a confession, the prosecution must prove, by at least a preponderance of the evidence, that the confession was voluntary. Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618, 627 [1972].
[15] This opinion is to be narrowly construed as applying only to § 1130 public-law status termination proceedings. 10 O.S.Supp. 1977 § 1130. It does not change the standard of proof in (a) deprived-status proceedings, 10 O.S.Supp. 1977 § 1102; (b) any proceedings under the provisions of 10 O.S. 1971 § 9; and in (c) custody contests ancillary to divorce suits.
[16] Bomford v. Socony Mobile Oil Co., supra note 3 at 720-721; American First Title & Trust Company v. Ewing, Okl., 403 P.2d 488, 496 [1965]; Poafpybitty v. Skelly Oil Co., Okl., 394 P.2d 515, 520 [1964].
[17] The effective date of this opinion is the date of its promulgation but if rehearing should be sought, then the date rehearing is denied.