OSCN Found Document:IN THE MATTER OF J.L.O.

 

 
 

 
 IN THE MATTER OF J.L.O.
2018 OK 77
Case Number: 116465
Decided: 09/25/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 77, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

In the Matter of: J.L.O., IV, a Child Under 18 Years of Age,

Carolyn Dougherty, Appellant,
v.
STATE OF OKLAHOMA, Appellee.

ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY,
STATE OF OKLAHOMA

HONORABLE RODNEY SPARKMAN, SPECIAL JUDGE

Â¶0 Carolyn Dougherty (Mother), appeals the judgment of the Tulsa County District Court terminating her parental rights to J.L.O., IV (Child). We find the district court did not err in judgment.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

Isaiah Parsons, Charles Graham, and Matthew D. Day, PARSONS, GRAHAM & DAY, LLC, Tulsa, OK, for Appellant.

Kyle Felty, Assistant District Attorney, Tulsa County District Attorney's Office, Tulsa, OK, for Appellee.

Sal R. Munoz, Assistant Public Defender, Tulsa, OK, for Minor Child.

OPINION

DARBY, J.:

Â¶1 The questions presented to this Court are whether 1) the district court abused its discretion by denying Mother's motion to continue and allowing her waiver of jury trial; 2) a witness testifying telephonically violated Mother's right to procedural due process; 3) the State presented clear and convincing evidence to support the termination of parental rights; and 4) Mother's trial counsel provided effective assistance. We answer the first two questions in the negative and the last two in the affirmative.

I. BACKGROUND AND PROCEDURAL HISTORY

Â¶2 Mother gave birth to Child on June 6, 2016. On June 17, 2016, when Child was less than two (2) weeks old, the Oklahoma Department of Human Services (DHS) removed Child from Mother's custody. On June 28, 2016, the State filed a petition in Tulsa County District Court requesting that the court adjudicate Child deprived because of the following facts: On June 13, 2016, Tulsa Police pulled over Child's natural parents for expired tags. During the impound inventory, Tulsa Police found multiple items containing brown residue which the searching officer confirmed as heroin, via field test. Mother admitted to using heroin previously, but claimed that she had quit after learning she was pregnant. While Child was in the NICU for weight loss, hospital staff observed Mother with symptoms of continued heroin use including: passing out on a toilet, falling asleep with Child on her chest, and dozing off while standing up. The State alleged that Mother's actions in the above-described conditions constituted "neglect, failure to provide a safe and stable home, threat of harm, and substance abuse by [the] caretaker." 

Â¶3 On September 8, 2016, Mother failed to appear for the hearing and the Tulsa County District Court adjudicated Child deprived by consent due to 1) lack of proper parental care or guardianship; 2) abuse, neglect, or dependence; and 3) drug endangerment. The court also imposed an individualized service plan (ISP) by consent, requiring Mother to correct conditions of neglect, failure to provide safe and stable home, threat of harm, and substance abuse. On March 2, 2017, the State filed a Motion to Terminate Mother's parental rights to Child under Title 10A, Sections 1-4-904(B)(5), (7), and (17), alleging Mother had failed to correct the conditions that led to Child being adjudicated deprived. After Mother appeared three (3) hours late to the previously scheduled June 2017 permanency hearing, the district court scheduled a jury trial for August 28, 2017, on the motion to terminate parental rights.

A. Request for Continuance

Â¶4 Mother appeared for jury trial on August 28, 2017, and orally requested that the district court grant her a continuance. She stated that she had begun to make progress on correcting the conditions that led to Child being adjudicated deprived and she wanted more time to achieve success. Mother explained that she had suffered from unaddressed depression that had set her back on her ISP. Mother offered that she would be willing to waive her right to a jury trial in order to be scheduled for a non-jury trial at a later date. Because Child's biological father is a member of the Choctaw tribe, Mother also requested that the court find out whether the State had secured tribal testimony for her originally scheduled jury trial.

Â¶5 The State objected to a continuance, stating that they were prepared to proceed. Child agreed with the State's objection and argued that without compelling reasons, due to Child's young age and the length of time he had been kept in protective custody, the court should deny a continuance. Based on Mother's request, the district court recessed briefly to inquire whether tribal testimony would be available, if the court continued the trial. Before receiving an answer from the tribe, however, the court denied Mother's motion for a continuance due to the length of time the case had been pending.

B. Waiver of Jury Trial

Â¶6 After unequivocally denying the motion for continuance, the district court clarified that Mother was still scheduled for a jury trial that day. The court then asked Mother, "is it your desire to waive your right to have a jury trial on the request for termination issue?" Mother replied affirmatively. The court then reviewed the form waiver of jury trial with Mother:

THE COURT: It says here that you do wish to waive your right to have a jury trial. Is that your request at this time, ma'am?

[MOTHER]: Yes, Your Honor.

THE COURT: Did you make that decision voluntarily? Is it - - did anyone force you, coerce you or promise - -

[MOTHER]: No, Your Honor.

THE COURT: - - you anything of value to waive your right to have a hearing by jury?

[MOTHER]: No, Your Honor.

THE COURT: Ma'am, you realize by doing this the issue of whether or not to terminate your parental rights will be coming to me. I'll hear all the evidence on both sides of the case and decide whether or not the State has met their burden. Is that your understanding of how you want to proceed?

[MOTHER]: Yes, Your Honor.

THE COURT: Ma'am, are you currently under the influence of any substance that could affect your ability to understand what we're doing today?

[MOTHER]: No

THE COURT: Okay. Are you currently taking or prescribed any type of medication?

[MOTHER]: I am prescribed methadone.

THE COURT: Methadone?

[MOTHER]: Uh-huh.

THE COURT: Okay. And are you taking it as prescribed by a physician and following all of those regulations --

[MOTHER]: Yes, Your Honor.

THE COURT: Okay. And, ma'am, on this back page this form is filled out and there's a signature. Is that your signature up at the top line?

[MOTHER]: Yes, Your Honor.

THE COURT: Okay. At this time I will make the following findings that the mother was - - actually, ma'am, I need to swear you in. I'm sorry. Please raise your right hand. Ma'am, do you swear or affirm to tell the truth, the whole truth and nothing but the truth, so help you God?

[MOTHER]: I do.

THE COURT: Okay. Ma'am, the answers to my questions I just asked you on the record, are those answers true and correct?

[MOTHER]: Yes, they are.

THE COURT: Okay. Thank you, ma'am.

So I'll find that the mother was sworn and responded to the questions under oath, that she understands the nature, purpose and consequence of this proceeding, that her waiver of jury trial was knowingly and voluntarily entered and the Court will accept that at this time and at this time the Court finds that she is competent for the purposes of making that decision. So at this point the Court will show the mother has waived her right to have a jury trial. At this point since we have not heard from the Choctaw Nation, any objection to my taking the issue of the father's consent and the mother's non[-]jury trial to tomorrow morning at 9:00?

Trial Tr. 15:13-17:20, In re J.L.O., JD-16-303, Aug. 28, 2017. With no objections, the district court continued the non-jury trial until the next morning.

C. Non-Jury Trial

Â¶7 On August 29, 2017, the Tulsa County District Court held the non-jury trial on termination of Mother's parental rights to Child. At trial, Mother testified that she did not finish the assigned parenting classes because of transportation issues and emotional distress over Child's father being arrested. Although assigned to attend substance abuse counseling once a week, Mother admitted she attended only five (5) to fifteen (15) sessions over the course of ten (10) months and was eventually dismissed for her continued lack of attendance. Mother took no action to resume counseling.

Â¶8 Furthermore, the evidence showed that Mother failed to submit to approximately fifty (50) required drug screenings, providing only three (3) urine samples over the course of ten (10) months. Nonetheless at trial, Mother denied having a drug problem numerous times and stated that she did not understand that a missed urine screen was considered a positive result. Mother self-reported heroin use to her probation officer in January 2017. She also tested positive for various illegal substances in February, March, June, and finally on August 25, 2017. Mother claimed that a prescription medication (she was using to treat a urinary tract infection) was the cause of the positive result four (4) days before trial, as well as the positive in February 2017. Mother, however, had not been prescribed the blamed medication and failed to produce any evidence to show that the drug has the potential to show up on a toxicology report, as claimed.[1]

Â¶9 When asked if she felt she had corrected the conditions in the case, Mother stated "[n]ot all of them but most of them." Mother expounded that while she had not finished the parenting classes, rented or purchased a place of her own to live, or maintained employment; she had established a stable living environment, was seeking a job, and was sober. Mother agreed that in the past she had not demonstrated sobriety, defining "the past" as any time prior to walking into the courtroom that day.

Â¶10 Mother claimed to be sober while testifying, but stated that she had taken a prescribed dose of methadone earlier that morning. The State asked Mother if she felt she had exhibited any unusual behavior that day in court, such as having difficulty keeping her eyes open, speaking slowly, or acting lethargically, and she answered no. When asked if she believed it would be best for Child to return to her care that day, Mother said yes, that she was ready, willing, and able to provide appropriate and safe care to Child and that there was nothing further she needed to do to provide safety for him. Trial Tr. 73:6-14, In re J.L.O., JD-16-303, Aug. 29, 2017.

Â¶11 After Mother's testimony, the State called an Indian Child Welfare Social Worker, from the Choctaw Nation, who was sworn in and testified via telephone. The Choctaw social worker testified that, due to the length of time the case had been ongoing and the numerous unsuccessful attempts by DHS to reunite Mother with Child, she believed Child deserved permanency and was against allowing Mother additional time to correct the conditions that led to termination. She finally stated that she felt it was in the best interest of Child to terminate Mother's parental rights.

Â¶12 The State last called a DHS child welfare specialist, who testified that it was in Child's best interest to terminate Mother's rights because Mother had not corrected any of the conditions that led to Child being adjudicated deprived. The child welfare specialist noted that Mother had failed to show her ability to provide a safe and stable home, that substance abuse and neglect were both still issues, and that DHS believed that Mother presented a threat of harm to Child if he was returned to her care -- pointing to the positive urine screen results from Mother the week before. The child welfare specialist stated that Mother's efforts seemed last-minute and did not warrant additional time under the circumstances -- pointing out the importance of permanency for Child.

Â¶13 In lieu of closing, the State simply withdrew the request for termination under Title 10A, Section 1-4-904(B)(7), leaving the request for termination under the grounds of Sections 1-4-904(B)(5) and (17). Mother made the following closing statement:

Judge, . . . you've heard the facts and evidence today. Our request on behalf of natural mother, the legal argument that we're making at this time is not that you return the child today to natural mother. I think it's clear from the facts and evidence that we still have some work to do, but we are asking that with the age of this child and with the - - the progress that mom has made lately the Court consider allowing natural mother some more time, at least an additional 90 days to get further completion on her service plan. So at this time, Judge, we would ask that you deny the State's motion to terminate based upon the fact that natural mother has started engaging in services and even some services that weren't on her treatment plan that might be more in the nature of helping with the main issue which is the substance abuse issue, and we would ask that you deny the State's motion at this time and allow her some more time to complete her service plan . . . and to correct the conditions.

Trial Tr. 160:25-161:19, In re J.L.O., JD-16-303, Aug. 29, 2017.

Â¶14 The district court found that Child was placed in DHS care on June 17, 2016, and that, after proper notice, Child was adjudicated deprived by consent on September 8, 2016, with an ISP imposed by consent on Mother that same day. The district court noted that Mother had been provided at least three months to work on the treatment plan and to correct the conditions that led to Child's placement in DHS custody. The district court found that Mother had failed to correct conditions of neglect, threat of harm, failure to provide a safe and stable home, and substance abuse by a caretaker, under which Child was placed in the State's custody.

Â¶15 The district court determined that additional time would not make a difference to Mother completing the conditions; the court noted the minimal efforts made by Mother throughout the case, including her continued drug use even after the State filed the motion to terminate her parental rights. The court also stated that "it's hard for this Court to believe that [Mother] would fully engage[] in substance abuse treatment if [Mother] does not believe even on this date that she does not have a drug problem." Trial Tr. 166:11-14, In re J.L.O., JD-16-303, Aug. 29, 2017. Therefore, the district court found that termination of Mother's parental rights was in the best interest of Child.

Â¶16 The district court also determined that DHS had provided Mother with active efforts to reunify with Child and that reunification had failed. Pursuant to the Indian Child Welfare Act, the court found beyond a reasonable doubt that returning Child to Mother's custody would result in serious physical and/or emotional harm to Child.[2] The district court also found that Child was under the age of four and had been in foster care for six (6) of the most recent twelve (12) months prior to the State filing the Motion to Terminate. Finding that the State met its burden of proof by presenting clear and convincing evidence that Mother's parental rights to Child should be terminated pursuant to Title 10A, Sections 1-4-904(B)(5) and (B)(17), the district court therefore granted the State's Motion to Terminate in an order filed September 11, 2017.

Â¶17 Mother appealed with five propositions of error: 1) the district court committed reversible error in sustaining the State's motion to terminate as the ruling was not supported by clear and convincing evidence; 2) the district court wrongfully denied Mother's motion to continue her trial; 3) Mother did not knowingly and voluntarily waive her right to a jury trial; 4) ineffective assistance of counsel; and 5) Mother was denied her constitutional right to confront all witnesses called against her when a witness testified via telephone. We address the issues in the order of occurrence.

II. ANALYSIS

A. Motion to Continue Trial

Â¶18 Mother asserts that the district court erred when it denied her oral motion for a continuance the day the jury trial was scheduled. A district court "may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just." 12 O.S.2011, Â§ 667. We review a grant or refusal of a motion to continue for abuse of discretion. Anderson v. Chapman, 1960 OK 235, Â¶ 6, 356 P.2d 1072, 1073; Mott v. Carlson, 1990 OK 10, Â¶ 6, 786 P.2d 1247, 1249.

Â¶19 Mother states that the district court abused its discretion when it considered the availability of the State's witnesses prior to ruling on the motion, arguing that "availability of the State's witnesses is not sufficient for granting a continuance in the State's favor any more than a need to maintain a docket or effect permanency for the Minor Child." Mother also claims that the court should have taken into consideration other facts such as Mother's jury trial waiver and methadone use.

Â¶20 This Court has stated that there may be an abuse of discretion in denying a motion to continue "when a trial is forced with such dispatch as to result in depriving an interested party of reasonable opportunity to prepare for trial, and secure witnesses." Bookout v. Great Plains Reg'l Med. Ctr., 1997 OK 38, Â¶ 11, 939 P.2d 1131, 1135 (quoting State v. Duerkson, 1943 OK 6, Â¶ 7, 132 P.2d 649, 650). We have also held that the applicable chief test is "whether the grant or denial of the motion operates in the furtherance of justice." Duerkson, 1943 OK 6, Â¶ 7, 132 P.2d at 650; see also In re N.L., 1988 OK 39, Â¶Â¶ 29-32, 754 P.2d 863, 869 (denial of motion to continue was not an abuse of discretion when Mother requested a continuance to controvert a report, but Mother did not explain the nature or materiality of evidence she expected to obtain, did not file a written motion for continuance, did not show due diligence in obtaining evidence to controvert the report, and made no argument why a continuance would be required to give her a fair opportunity to controvert the report).

Â¶21 Mother's oral motion for a continuance occurred on the morning the jury trial was scheduled to occur. Mother requested the continuance for additional time to work on her treatment plan, not for the purpose of gathering additional evidence or witnesses or for attorney preparation. While Mother offered to waive her right to a jury trial in exchange for a continuance, the court clearly denied the motion to continue before Mother waived her right to a jury trial. Mother also argues that the court improperly considered the availability of the State's witness; however, Mother specifically requested the court to do so as part of her motion to continue. Further, consideration of availability of key witnesses in granting or denying a motion to continue is not an abuse of discretion. Bookout, 1997 OK 38, Â¶Â¶ 14-16, 939 P.2d at 1135 (denial of a two-day continuance for a newly retained attorney to prepare expert witnesses was an abuse of discretion). Denial of the motion operated in furtherance of justice and did not deprive Mother of reasonable opportunity to prepare. We find the district court did not abuse its discretion in denying the motion to continue.

B. Waiver of Jury Trial

Â¶22 Mother charges that, because of her methadone use, she did not knowingly and voluntarily waive her right to a jury trial. The right to a jury trial in a child deprivation hearing can be surrendered by voluntary consent or waiver. 12 O.S. Â§591; In re D.D.F. & S.D.F., 1990 OK 89, Â¶ 5, 801 P.2d 703, 705. Waiver must be competently, knowingly, and intelligently given. Colbert v. State, 1982 OK CR 174, Â¶ 13, 654 P.2d 624, 627; In re D.D.F. & S.D.F., 1990 OK 89, Â¶ 8, 801 P.2d at 705. We review allowance or denial of waiver of the right to a jury trial for abuse of discretion. See Colbert, 1982 OK CR 174, Â¶ 13, 654 P.2d at 628.

Â¶23 Mother argues that the district court improperly failed to ask her if the methadone she had taken affected her ability to think clearly. The district court did, however, ask Mother specifically if she was currently under the influence of any substance that could affect her ability to understand what was happening. Mother answered no. The examining court is in the best position to observe an individual who waives a substantial and significant right. In re Adoption of A.W.H., 1998 OK 61, Â¶ 4, 967 P.2d 1178, 1179. The district court is able to observe the person's actions and appearances, looking for any indication of a lack of mental clarity. Seabolt v. Ogilvie, 1969 OK 3, Â¶ 19, 448 P.2d 1009, 1012.

Â¶24 Mother also argues that due to questions from the State the next day, the district court should have been on notice that Mother was under the influence of drugs, such that her waiver was not knowingly given. Mother argues that the State's questions, regarding whether she was under the influence on August 29, 2017, should have affected the district court's ruling the day before finding that Mother was competent to waive her jury trial. While the record implies that Mother may have appeared to be under the influence on August 29, there is no evidence in the record that Mother was exhibiting similar behavior on August 28 when the court accepted Mother's waiver of jury trial. The district court did not abuse its discretion in allowing Mother to waive her right to a trial by jury on August 28, 2017.

C. Right to Confront Witnesses

Â¶25 Mother claims that the district court erred when it allowed the State to present telephonic testimony from the Choctaw Nation without objection. A party who fails to preserve an issue for appeal, by timely objecting to the issue at the district court, waives review of that issue in this Court. Bane v. Anderson, Bryant & Co., 1989 OK 140, Â¶ 24, 786 P.2d 1230, 1236. A timely objection, however, is not necessary if a showing of prejudice or fundamental error is made. McMillian v. Lane Wood & Co., 1961 OK 95, Â¶ 14, 361 P.2d 487, 492. Mother has failed to show any prejudice to her resulting from the telephonic testimony.

Â¶26 Mother further claims that she was denied her Sixth Amendment guarantee that "the accused shall enjoy the right . . . to be confronted with witnesses against him," U.S. Const. amend VI; Okla. Const. art. II, Â§ 20. Mother believes the Sixth Amendment is applicable due to this Court's statement that the "full panoply of procedural safeguards must be applied" in child deprivation cases. In re Chad S., 1978 OK 94, Â¶ 12, 580 P.2d 983, 985. This Court has stated repeatedly, however, that the Sixth Amendment to the United States Constitution is not implicated in parental rights termination proceedings as the confrontation clause only applies to criminal cases. In re A.M. & R.W., 2000 OK 82, Â¶ 9 n.7, 13 P.3d 484, 487 n.7; In re Rich, 1979 OK 173, Â¶ 13 n.21, 604 P.2d 1248, 1253 n.21. Instead, we have determined that the requirement that the full panoply of procedural safeguards be applied to child deprivation hearings is based on due process. In re A.M. & R.W., 2000 OK 82, Â¶Â¶ 7- 8, 13 P.3d at 487; U.S. Const. amend. XIV, Â§ 1; Okla. Const. art. II, Â§ 7. We review a claim of denial of procedural due process de novo. In re A.M. & R.W., 2000 OK 82, Â¶ 6, 13 P.3d at 487.

Â¶27 In parental termination proceedings, procedural due process requires a meaningful and fair opportunity to defend which includes a reasonable opportunity to confront and cross-examine witnesses. Id. Â¶ 9, 13 P.3d at 487. Here, the State called a witness to testify via telephone. The witness was sworn in and questioned by all parties via telephone. Mother was not excluded from the courtroom during any of this testimony, or barred from participation in cross-examination; rather, like everyone else present, she simply was not able to physically observe the witness. Mother conducted an extensive cross-examination of this witness.

Â¶28 Mother was allowed reasonable opportunity to confront and cross-examine the witness; there was no due process violation of Mother's rights. Further, Title 10A, Section 1-4-503(A)(4) specifically allows the district court to conduct any proceeding held pursuant to the Oklahoma Children's Code via teleconference communication. 10A O.S.2011, Â§ 1-4-503(A)(4).[3]

D. Clear and Convincing Evidence

Â¶29 In parental termination cases, the State bears the burden to show by clear and convincing evidence that the child's best interest is served by the termination of parental rights. In re C.D.P.F., 2010 OK 81, Â¶ 5, 243 P.3d 21, 23; In re C.G., 1981 OK 131, Â¶ 17, 637 P.2d 66, 71-72. Clear and convincing evidence is the degree of proof which produces a firm belief or conviction as to the truth of the allegation in the mind of the trier of fact. In re C.D.P.F., 2010 OK 81, Â¶ 5, 243 P.3d at 23. Appellate review of a termination of parental rights must show that the record contains clear and convincing evidence to support the district court's decision. In re S.B.C., 2002 OK 83, Â¶ 7, 64 P.3d 1080, 1083.

Â¶30 Mother alleges that the State failed to prove by clear and convincing evidence that termination of her parental right was in the best interest of Child. The district court terminated Mother's parental rights under Title 10A, Sections 1-4-904(B)(5) and (17). Those sections provide:

(B) The court may terminate the rights of a parent to a child based upon the following legal grounds:

. . . .
5. A finding that:
a. the parent has failed to correct the condition which led to the deprived adjudication of the child, and
b. the parent has been given at least three (3) months to correct the condition;

. . . .
17. A finding that a child younger than four (4) years of age at the time of placement has been placed in foster care by the Department of Human Services for at least six (6) of the twelve (12) months preceding the filing of the petition or motion for termination of parental rights and the child cannot be safely returned to the home of the parent.
a. For purposes of this paragraph, a child shall be considered to have entered foster care on the earlier of:
(1) the adjudication date, or
(2) the date that is sixty (60) days after the date on which the child is removed from the home.

10A O.S.Supp.2015, Â§Â§ 1-4-904(B)(5),(17).

1. Section 1-4-904(B)(5)

Â¶31 At the time of trial, Mother had been given eleven and a half months to correct the conditions that led to Child being adjudicated deprived: neglect, failure to provide a safe and stable home, and threat of harm and substance abuse by caretaker. While Mother did show some effort toward correcting these conditions, she continued to fail drug tests even after the State filed for termination of her parental rights and failed to even admit that she had a drug problem.

Â¶32 The State presented evidence that Mother also failed to complete substance abuse counseling or take steps to be re-admitted to the program after being dismissed for lack of attendance. Workers from both DHS and the Choctaw Nation testified that termination of Mother's parental rights was in Child's best interest. The State offered evidence that Mother admitted to drug use, refused countless drug tests, and failed at least four drug tests -- the most recent less than one week before trial.

2. Section 1-4-904(B)(17)

Â¶33 Child was removed from the home on June 17, 2016, and was adjudicated deprived on September 8, 2016. Therefore, Child "entered foster care" sixty (60) days after removal from the home, on August 16, 2016. At that time, Child was two (2) months old. Child had been in foster care for six and a half (6 1/2) of the past twelve (12) months when the petition for termination of parental rights was filed. Due to Mother's continued drug use, Child could not be safely returned to the home.

Â¶34 It is clear that Mother failed to correct the conditions that led to Child being adjudicated deprived and that Child could not safely return to the home of Mother at the time of trial. The State presented clear and convincing evidence to prove the grounds for termination. We find the district court did not err by terminating Mother's parental rights to Child.

E. Effective Assistance of Counsel

Â¶35 Lastly, Mother asserts ineffective assistance of trial counsel. We perform a de novo review on procedural due process claims from a termination of parental rights. In re A.M. & R.W., 2000 OK 82, Â¶ 6, 13 P.3d at 487. This Court has said numerous times that parents and children have the right to effective assistance of counsel in proceedings terminating parental rights. 10A O.S.2011, Â§ 1-4-306(A); In re T.M.H., 1980 OK 92, Â¶ 7, 613 P.2d 468, 471; In re D.D.F. & S.D.F., 1990 OK 89, Â¶ 15, 801 P.2d at 707. We review claims for ineffective assistance of counsel in termination proceedings under the same standard used in criminal trials. In re R.S., 2002 OK CIV APP 90, Â¶ 16, 56 P.3d 381, 384; In re N.L., 2015 OK CIV APP 24, Â¶ 18, 347 P.3d 301, 304.

Â¶36 To require reversal, the claimant must show that 1) the attorney's performance was deficient, and 2) the deficient performance prejudiced the defense such that but-for the deficient performance, the result would have been different. Strickland v Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). The proper measure of attorney performance is reasonableness under prevailing professional norms. Id. at 688; In re D.D.F. & S.D.F., 1990 OK 89, Â¶ 15, 801 P.2d at 707 (citing In re Orcutt, 173 N.W.2d 66, 69 (Iowa 1969)). Judicial scrutiny of trial counsel's performance is highly deferential; every effort must be made to avoid hindsight, and the Court must indulge a strong presumption that counsel's conduct falls within the range of reasonable assistance. Strickland, 466 U.S. at 689. The claimant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id.

Â¶37 Mother claims she received deficient assistance; citing a lack of overall objections, opening statement, witnesses called on her behalf, and objection to a witness testifying telephonically or further verification of that witness's identity. The choice not to give an opening statement, call witnesses, object excessively, and even not to object to testimony of a witness via telephone, however, all "might be considered sound trial strategy." Mother fails to show the actions of trial counsel were not reasonable or that they in any way prejudiced her such that but for the errors, the result would have been different. Strickland, 466 U.S. at 694.

Â¶38 In fact, Mother fails to show any prejudice resulting from trial counsel's strategy. None of the counsel in this proceeding made opening statements. After both the State and Child waived closing, Mother's counsel made a closing statement. Counsel's strategic choices were within the range of professionally reasonable judgment. Mother's failure to show deficient performance or sufficient prejudice defeats her ineffectiveness claim.

III. CONCLUSION

Â¶39 The district court did not abuse its discretion when it denied Mother's motion for a continuance. Mother knowingly and voluntarily waived her right to a jury trial on the termination of her parental rights; the court did not abuse its discretion in allowing her waiver. The district court did not violate Mother's right to procedural due process when it allowed one of the State's witnesses to testify telephonically. Further, the evidence was clear and convincing that it was in Child's best interest to terminate Mother's parental rights. Finally, trial counsel for Mother was effective.

Â¶40 We find the district court did not err in its judgment granting the State's Motion to Terminate Parental Rights and hereby affirm. We remand to the district court for permanency proceedings.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

Combs, C.J., Gurich, V.C.J., Winchester, Edmondson, Colbert, Reif, Darby, JJ., concur;

Kauger, J., concurs in result;

Wyrick, J., concurs in judgment.

FOOTNOTES

[1] Direct Examination of Mother by State:

[State: Y]ou gave your third UA to DATL on your fourth visit there on Friday of last week; is that right?
[Mother:] Yes.
[State:] Okay. And you tested positive in that UA for benzos; correct?
[Mother:] Yes.
[State:]: Okay. Do you consider that to be a problem?
[Mother:] No.
[State:] Why not?
[Mother:] Because that was given to me for a UTI and that was given to me by someone because I don't have medical insurance.
[State:] So the benzo you were given was not a prescription for you?
[Mother:] No.
[State:] Okay. And is that the same benzo you were taking back in January - -
[Mother:] Yes.
[State:] - - when you said it was for a UTI?
[Mother:] Yes. It's called sulfameth and it's for like UTIs and - -
[State:] Do you have the same UTI from January?
[Mother:] Not that same one . . . . But, yeah, sulfameth shows up as a benzo.
[State:] Shows up as a benzo or is it a benzo?
[Mother:] It shows up as a benzo, but it's not classified as a benzo. It's actually classified as an antibiotic.
[State]:] Did you provide any - - well, I guess you couldn't have provided any prescription because you haven't been given a prescription; right?
[Mother:] Right.
[State:] Okay. Do you find it problematic for someone with your history taking medication that hasn't been prescribed to you?
[Mother:] It could be problematic.

Trial Tr. 60:1- 61:12, In re J.L.O., JD-16-303, Aug. 29, 2017.

[2] In cases that fall under the State or Federal Indian Child Welfare Acts, the State must prove beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child. In re H.M.W. & K.D.W., 2013 OK 44, Â¶ 6, 304 P.3d 738, 740.

[3] A. All cases initiated by the filing of a petition alleging that a child is deprived shall be heard separately from the trial of other cases against adults. The adjudicative hearings and hearings for termination of parental rights shall be conducted according to the rules of evidence. All other hearings and proceedings conducted pursuant to the Oklahoma Children's Code shall be informal and the rules of evidence shall not apply.
. . . .
4. If authorized by the court, any proceeding held pursuant to the Oklahoma Children's Code may be conducted via teleconference communication; provided, that when a parent or child appears for a proceeding via teleconference communication, the attorney representing that parent or child shall personally appear at the hearing. For purposes of this paragraph, "teleconference communication" means participation in the hearing by interactive telecommunication, including telephonic communication by the absent party, those parties present in court, the attorneys and others deemed to be necessary participants to the proceeding including, but not limited to, foster parents and facility staff where a child may be receiving care or treatment.

10A O.S.2011, Â§ 1-4-503(A)(4) (emphasis added).

Â