801 P.2d 703 (1990)
IN the Matter of D.D.F. and S.D.F., Minor Children.
MICHAEL F., Appellant,
v.
STATE of Oklahoma, ex rel, DEPARTMENT OF HUMAN SERVICES and D.D.F. and S.D.F., Minor Children, Appellees.
No. 70785.
Supreme Court of Oklahoma.
September 18, 1990.
Rehearing Denied December 18, 1990.
Randal D. Morley, Tulsa, for appellant.
William D. LaFortune, Asst. Dist. Atty., Tulsa, for appellee, the State.
Renee Waisner, Asst. Public Defender, Tulsa, for appellees, minor children.
Michael F., pro se.
*704 SUMMERS, Justice:
Three questions are presented on certiorari in this Juvenile proceeding to terminate a father's parental rights: (1) Did the father knowingly and voluntarily waive his right to a jury trial? (2) Was he afforded effective assistance of counsel? (3) Is the trial court's order terminating his parental rights supported by the evidence and the law? We answer all three in the affirmative, and affirm the lower court.
Michael F., a divorced and single man, adopted two children from an orphanage in Brazil. The two little girls, ages five and six, are sisters. Shortly after the adoption Mr. F. was convicted of six counts of Obtaining Money by False Pretenses and was sentenced to prison. The girls were placed in the protective custody of the Department of Human Services after having lived with Mr. F. some nine months. Once in DHS custody the DHS became aware of the possibility that the girls had been sexually abused by their adoptive father. After physical examination of the children, DHS reported the alleged abuse to the Tulsa authorities, and charges were filed against Mr. F. for Lewd Molestation. In 1987, Michael F. was convicted in the Tulsa County District Court of two counts of Lewd Molestation of his adoptive daughters, and was sentenced to ten years imprisonment on each count. These convictions are currently on appeal to the Court of Criminal Appeals, Appeal No. 88253.
The State of Oklahoma then brought this action to have the children declared deprived and to terminate the parental rights of Mr. F. By agreement of the parties, both actions were tried together in a nonjury trial. In light of the evidence of sexual abuse the judge determined that the children were deprived. After making this finding he terminated the father's parental rights under 10 O.S.Supp. 1987, § 1130(A)(5) and (7). From this ruling, Michael F. appealed.
The Court of Appeals, in an unpublished opinion, upheld the trial judge's decision. Relying on Section 1130(A)(5) and (7), the appellate court agreed that the evidence supported the termination of parental rights. The court also determined that Mr. F.'s allegation that he was unconstitutionally deprived of a jury trial was unsupported *705 by the record, insomuch as he had waived his right to trial by jury. Appellant petitioned for certiorari, which was granted by this Court on May 8, 1990. On certiorari, he raises three issues: (1) he was unconstitutionally deprived of a jury trial, (2) he was denied effective assistance of counsel, and (3) his parental rights were improperly terminated because 10 O.S.Supp. 1987 §§ 1130(A)(5) and (7) requires a "final" conviction.

I. JURY TRIAL
Michael F. charges that he was deprived of his constitutional right to a trial by jury. He urges that A.E. v. State, 743 P.2d 1041 (Okla. 1987) supports his contention that "parental rights are too precious to be terminated without the full panoply of protections afforded by the Oklahoma Constitution," id. at 1048, including the right to jury trial. There is no question but that a parent has such right. However, it is equally well established that this right can be surrendered by voluntary consent or waiver. Id.; Seymour v. Swart, 695 P.2d 509, 511 (Okla. 1985).
On November 13, 1987, Mr. F. consented to a joint trial on the issues of whether the children were deprived and whether his parental rights should be terminated. The order, signed by both lawyers and the trial judge, stated that the "deprived action and termination action [would] be heard at one time before the same jury." O.R. 71. On January 19, 1988, he agreed to waive his right to jury trial in these matters. In this order the trial judge stated that "[t]he father through his attorney waives right to jury trial ..." The order continued by requiring the State to file the Motion for Termination of Parental Rights before February 17, 1988. On February 17, 1988, the Motion for Termination of Parental Rights was filed.
Mr. F. now argues that he did not intend to waive his right to jury trial with regard to the termination proceedings, but only as to the deprivation hearing. The record does not support this assertion. He consented to the joint trial of these issues long before he waived his right to jury trial. When he waived this right, he knew that both issues were set to be tried simultaneously. This is reflected by the comments of the parties and the trial judge at the commencement of the trial. Mr. F.'s attorney asked that the proceedings be bifurcated, that the deprivation be tried first and the termination thereafter. The attorneys for the State and the children argued that bifurcation would be a waste of time, especially in light of the fact that "[t]his is not being tried in front of a jury but it's in front of a judge." Tr. 4. In his ruling on these arguments, the trial judge noted out loud that he would be "more inclined to agree if we had a jury" (Tr. 5) but that since it was a non-jury trial, bifurcation was unnecessary. Appellant did not question the fact that both matters were being tried to a judge rather than a jury, although he had ample opportunity to do so. The trial proceeded with no request to withdraw his previously made waiver of jury trial. It is clear from the record that the orders of November 13, 1987 and January 19, 1988 evidenced F.'s intent to waive jury trial in both actions.
He also asserts that his waiver was not voluntary because he was coerced by his lawyer to waive this right. Mr. F. claims he was informed by his lawyer that unless he agreed to a non-jury trial, the court would force him to go to trial before the lawyer had time to prepare. We have searched the record and find no evidentiary support for this claim. We agree with the Court of Appeals that Mr. F. voluntarily and knowingly waived his right to a jury trial on both issues.

II. ASSISTANCE OF COUNSEL
Appellant, relying on In re Chad S., 580 P.2d 983, 985 (Okla. 1978), next argues that it was error to refuse to appoint counsel to represent him on appeal. This point is moot; the Court of Appeals directed that appellate counsel be appointed on November 2, 1989. The Tulsa County District Court promptly appointed counsel to represent Mr. F. during his appeal, and counsel has complied with the briefing rules.
*706 He also asserts that he was denied effective assistance of counsel at trial because his court appointed attorney was inexperienced (it was said to be his first trial), and made several errors. The Court of Appeals failed to address the issue. The question is one of first impression in an Oklahoma proceeding wherein parental rights are sought to be terminated.
In In re Chad S., 580 P.2d at 985, we discussed the nature of a termination proceeding, comparing it to a criminal trial and quoted the following language:
While a dependency proceeding is not a criminal proceeding, it is substantially similar. The state is the initiating party, the proceeding is formal, and the potential loss is quite substantial. Since the state is threatening the deprivation of a fundamental interest, it must provide counsel to indigent parents unless it can demonstrate a compelling state interest in not providing counsel. Since the state has no compelling interest in not providing counsel, the equal protection clause of the Fourteenth Amendment requires the provision of counsel to indigent parents in dependency proceedings. Id. at 985-86, quoting Davis v. Page, 442 F. Supp. 258 (S.D.Fla. 1977).
We concluded that under the Fourteenth Amendment and the statutes of Oklahoma, the fundamental nature of parental rights requires that the right to counsel must be observed in proceedings that may lead to the termination of parental rights. Id.; see also In re F.K.C., 609 P.2d 774, 776 (Okla. 1980).[1]
More recently, in Lassiter v. Dept. of Social Serv., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Supreme Court addressed this question, holding that the Fourteenth Amendment does not always require that counsel be appointed in termination proceedings. In reaching this result, the Court reasoned that while in some termination proceedings, counsel is required to ensure that the judicial proceedings are fundamentally fair, the standard of "due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed." Id. at 31-32, 101 S.Ct. at 2162, quoting Gagnon v. Scarpelli, 411 U.S. 778, 788, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973). The Court recognized that many states had held that the appointment of counsel was always necessary, and encouraged that the higher standard imposed by states, such as that adopted in Oklahoma, be upheld:
A wise public policy, however, may require that higher standards be adopted than those minimally tolerable under the Constitution ... The Court's opinion today in no way implies that the standards increasingly urged by informed public opinion and now widely followed by the States are other than enlightened and wise. Id. 452 U.S. at 31-32, 101 S.Ct. at 2161-2162, quoting Gagnon v. Scarpelli, 411 U.S. 778, 788, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973)
We continue to adhere to the philosophy enunciated in Chad S. Although the federal constitution does not require that counsel be appointed in all termination proceedings, we believe that the rights at issue are those which are fundamental to the family unit and are protected by the due process clause of the Oklahoma Constitution, Art. 2, § 7. See In re Rich, 604 P.2d 1248, 1253 (Okla. 1979). The integrity of the family and "preservation of the parent-child relationship command the highest protection in our society." Davis v. Davis, 708 P.2d 1102, 1109 (Okla. 1985). The deprivation of these rights is a serious matter, and failure to provide counsel may result in a deprivation of due process. See In re F.K.C., 609 P.2d 774, 776 (Okla. 1980). But see In re Delaney, 617 P.2d 886, 889 (Okla. 1980). In these proceedings, the State has the burden of proving, by clear and convincing evidence, that the parent-child relationship should be severed. A.E., 743 P.2d at 1042.
*707 Aside from constitutional mandates, this state also legislatively provides for appointed counsel in termination proceedings. 10 O.S. 1981, § 1109(B) says:
B. If the parents, guardian, or other legal custodian of the child requests an attorney and is found to be without sufficient financial means, counsel shall be appointed by the court if a petition has been filed alleging that the child is a deprived child, a child in need of supervision, or a child in need or treatment, or if termination of parental rights is a possible remedy....
The legislature has thus expressed its concern for parents who are faced with the termination of their parental rights, and has decided that such proceedings shall not be held without the parents having an opportunity to be represented by counsel.
Taking into consideration both the constitutional and statutory requirements that counsel be provided, we must also agree with Mr. F. that the right to counsel is the right to effective assistance of counsel. The right to counsel would be of no consequence if such counsel were not required to represent the parent in a manner consistent with an objective standard of reasonableness. Orcutt, 173 N.W.2d at 69.
The appellant asserts that his counsel made several errors so egregious as to have undermined the trial and prevented a just result. After review of the record including the trial transcript, we do not find this assertion to be supported. The transcript and record reflect a great deal of preparation on the part of his attorney. The attorney filed several motions and briefs with regard to the State's expert witness, and filed objections regarding the testimony of the girls. Throughout a highly contested trial he conducted himself in a professional manner. He asked that the proceedings be bifurcated so as to avoid prejudice to his client. He invoked the rule of sequestration of witnesses. He vigorously cross-examined the opposing witnesses. He made objections, many of which were sustained. He was able to get several items of evidence helpful to his client admitted over the strenuous objections of counsel for the state and children. At the close of the State's evidence he argued a demurrer to the evidence. In fact, at the four day trial's conclusion, the trial judge commended the attorney for his efforts:
First, this afternoon the Court would like to commend Mr. Lavoi for his representation of Mr. [F.'s], court appointed counsel in this case. It was very obvious to the Court throughout these proceedings that many hours of preparation have been devoted by Mr. Lavoi to this case.
As to Mr. F.'s claim that his counsel was ineffective due to his inexperience, we merely wish to point out that "[a] lawyer need not have special training or prior experience to handle legal problems of a type with which the lawyer was previously unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience." Title 5 O.S.Supp. 1988, Ch. 1, App. 3-A, Rule 1.1, Comments. In the present case it is obvious that the lawyer's inexperience did not impair his ability to serve as effective and competent counsel for Michael F.

III. TERMINATION OF PARENTAL RIGHTS UNDER 10 O.S.SUPP. 1986, § 1130(A)(5)
Mr. F. finally asserts that it was error to terminate his parental rights under 10 O.S.Supp. 1986, § 1130(A)(5) and (7) by reason of his Lewd Molestation conviction and sentence because such convictions were not final; rather they were on appeal to the Court of Criminal Appeals. We agree. A "conviction" under (A)(5) or a "sentence" under (A)(7) must be final in order to be used under those sections for termination.
The trial judge specifically held that the convictions did not have to be final under Sections (A)(5) and (A)(7) and the Court of Appeals agreed. We have never directly addressed the question of the necessity for "finality" of a conviction under Section 1130; but we have addressed this question in another context. In State ex rel. Heartsill v. County Election Bd., 326 P.2d 782 (Okla. 1958), we were called upon to consider whether 19 O.S. 1951, § 132, which requires *708 county officers to be qualified voters, and Art. III, Section 1 of the Oklahoma Constitution, which states that convicted felons shall not be entitled to vote, require a "final" conviction. The plaintiff, a county commissioner, was convicted of a felony. He appealed the conviction, and while on appeal filed his notice of candidacy to run for re-election. His candidacy was contested on the ground that he had been convicted of a felony. This Court, relying on Commonwealth ex rel. McClenachan v. Reading, 336 Pa. 165, 6 A.2d 776 (1939), reasoned that "[u]ntil they have been convicted as evidenced by a final judgment they cannot be deprived of the right to hold the offices to which they were appointed." We thus concluded that in this situation, the term "convicted" imported a final judgment, and absent a final judgment, an individual could not be deprived of his right to run for public office. The same conclusion has been reached when addressing the question of finality in different situations. See, e.g., State v. Bridwell, 592 P.2d 520, 525 (Okla. 1979) (conviction must be final in order to revoke physician's license under 59 O.S. 1971, § 513); Kirkendall v. State, 725 P.2d 882, 884 (Okla. Crim. App. 1986) (conviction must be final to be used under the enhancement statutes); Tice v. State, 283 P.2d 872, 875 (Okla. Crim. App. 1955) (conviction is final and can be used for enhancement purposes if the time for appeal has run).
We find this reasoning persuasive here. If an individual cannot be deprived of his office-holding rights be reason of a non-final felony conviction, then we fail to see how he could be so deprived of his parental ones. Mr. F.'s convictions for Lewd Molestation, being presently pending on appeal in the Court of Criminal Appeals, are not final, and thus cannot be the basis for the termination of parental rights under Sections (A)(5) and (A)(7) of § 1130.
However, this Court may affirm the holding of a trial court if the ruling is correct, even though its rationale is faulty. See In re Estate of Bartlett, 680 P.2d 369, 374 (Okla. 1984). Here, we find that the trial court's ultimate ruling that Mr. F.'s parental rights should be terminated was correct, but so hold on a basis other than that stated by the trial judge. "When public-law issues are present this court may, on review, resolve them by application of legal theories that were not tendered below." In re McNeely, 734 P.2d 1294, 1296 (Okla. 1987). In upholding the trial court's ruling but for different reasons, we note that our decision does not infringe on Michael F.'s right to be informed of the basis for the termination proceedings. He was given notice that the State sought to terminate his rights because of his sexual abuse of the girls. Our ruling ultimately turns on this factual finding of abuse.
The trial court, relying on 10 O.S.Supp. 1987, § 1130(A)(5) and (7), terminated the parental rights of Michael F. The parties do not dispute that this is the applicable statute. The pertinent provisions read as follows:
§ 1130. Termination of parental rights in certain situations
A. The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:

(5) A conviction in a criminal action pursuant to the provisions of Sections 843, 845, 1021.3, 1111 and 1123 of Title 21 of the Oklahoma Statutes or a finding in a deprived child action either that:

a. the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court ...
(7) A finding that all of the following exist:
a. the child is deprived, as defined in this chapter, and
b. custody of the child has been placed outside the home of a natural or adoptive parent, guardian or extended family member, and
c. the parent whose rights are sought to be terminated has been sentenced to *709 a period of incarceration of not less than ten (10) years, and
d. the continuation of parental rights would result in harm to the child based on consideration of the following factors, among others: the duration of incarceration and its detrimental effect on the parent/child relationship; any previous incarcerations; any history of criminal behavior, including crimes against children; the age of the child; the evidence of abuse or neglect of the child or siblings of the child by the parent; and the current relationship between the parent and the child and the manner in which the parent has exercised parental rights and duties in the past, and
e. termination of parental rights is in the best interests of the child. (Emphasis ours)
Appellant's argument centers around the definition of "conviction" as used in the above statutes. However, a reading of Section 1130(A)(5) clearly shows that either a conviction for one of the cited crimes or a finding in a deprived child action that the child was sexually abused by the parent is sufficient grounds upon which to base a termination of parental rights. Because the transcript reflects the trial judge's determination that the children were repeatedly subjected to sexual abuse by Mr. F., we uphold the Order of Termination.
The trial judge determined both girls to be deprived by reason of sexual abuse by Mr. F. He stated "The Court has considered all of the evidence relating to the molestation, including that given by the girls in open court, and is convinced that the girls were molested by Mr. [F.] in the fall of 1987." Tr. 542. In making his ruling, the judge recounted the testimony of the physician who examined the girls, and the history of F.'s deceitfulness in prior attempts to adopt other little girls. The State's doctor, a pediatrician with a specialty in child abuse, had testified that the two girls had been subjected to repeated vaginal abuse during the time they had been with F. The doctor also stated that during the course of the examination, he had spoken with each girl individually, and each had stated that F. had abused her. The trial judge also relied on the testimony of a social worker who began this investigation, and heard F.'s own testimony. We recognize that such a finding must be supported by clear and convincing evidence. After a thorough review of the record, we find the ruling to be so supported. See In re T.R.W., 722 P.2d 1197, 1203 (Okla. 1985).
Once the trial judge determined the children to be deprived by reason of sexual abuse under 10 O.S.Supp. 1988, § 1101(4), then Section 1130(A)(5) authorized the termination of the father's parental rights if either of two situations existed. One (a final conviction for sexual abuse) did not, and one (the finding of parental abuse) did. Because the termination of Mr. F.'s parental rights was authorized either by a final criminal conviction for molestation or by a finding that "the parent has sexually abused the child" (Sec. 1130A(5)a.), and the evidence and the trial court's finding support a termination under the latter, the trial court's ruling is affirmed.

IV. CONCLUSION
Although Mr. F. raised several other issues in his brief, they were not presented in his Petition for Certiorari and will not be addressed by this Court. Ford v. Ford, 766 P.2d 950, 952 n. 1 (Okla. 1988). We hereby affirm the trial court's finding that the children were deprived, and affirm the termination of the father's parental rights. Because we affirm in part for reasons other than those stated by the Court of Appeals the opinion of the Court of Appeals is vacated.
HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, DOOLIN, ALMA WILSON and KAUGER, JJ., concur.
SIMMS, J., concurs in judgment only.
NOTES
[1] A number of other jurisdictions have held similarly. See, e.g., Crist v. Div. of Youth & Family Serv., 128 N.J. Super. 402, 320 A.2d 203 (1974); Danforth v. State Dept. of Health & Welfare, 303 A.2d 794 (Me. 1973); In re Ella R.B., 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288 (1972); Orcutt v. State, 173 N.W.2d 66 (Iowa 1969).