1998 OK CIV APP 131

**In the Matter of J.T., an alleged deprived child.**

**STATE of Oklahoma ex rel. DE-PARTMENT OF HUMAN SERVICES, Appellee,**

v.

**Bill TRISLER and Teresa Trisler, Appellants.**

No. 89353.

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 25, 1998.

James W. Ely, Jr., Assistant District Attorney, Claremore, for Appellee.

John A. Akey, Tulsa, for Appellants.

GOODMAN, Presiding Judge.

¶ 1   This is an appeal from a district court order terminating the adoptive ·parents' rights to their minor child based upon a finding the parents had failed to correct the conditions which led to the adjudication the child is deprived.  Based upon our review of the record and applicable law, we reverse and remand for a new trial.

I

¶ 2   In April 1996, thirteen-year-old J.T.[1] and her adult sister informed the Department of Human Services of alleged methamphetamine use, manufacturing, and trafficking by J.T.'s adoptive parents, Rogers County, Oklahoma, residents Bill and Teresa Trisler. They expressed fear for the well-being of J.T. if she remained in the parental home. During the ensuing DHS investigation, a case worker interviewed the mother April 30, 1996, at the Rogers County DHS office. The parents consented to J.T. living with her sister and brother-in-law.

¶ 3   The case worker testified that in a telephone conversation with the mother May 10, 1996, the case worker requested an interview with the father. The mother "said he would be there [on] the following Monday, which he didn't appear." The mother left messages for the case worker May 7, and 15, but did not leave a return telephone number. The mother requested visitation with J.T. in telephone conversations with the case worker June 12 and, on June 25, 1996, inquired as to J.T.'s whereabouts. The parents' initial appearance in this matter was July 1, 1996, at which time the court ordered placement of J.T. with her sister.

¶ 4   The mother telephoned the case worker July 11 and arranged visitation on July 16. Neither the mother nor father appeared. The mother left a message for the case worker July 23, and another on August 8, informing the case worker "that she had been in a car wreck and hadn't been able to come to the visit." The mother telephoned August 19 to request visitation and tell the case worker "she had broken her arm in a car wreck in three place[s] [and] had sent [J.T.] a money order." On August 23, 1996, the mother again telephoned the case worker to tell her that she and the father "had been arrested on a drug bust" in Dewey, Oklahoma, and were jailed in Washington County, Oklahoma.

¶ 5   On September 26, 1996, the parents were served with Summons and Notice delivered to the Washington County jail informing

them the State had filed a petition alleging J.T. was deprived. They were ordered to appear October 9, 1996, for a hearing on the matter. The parents did not appear at the adjudicatory hearing and were not represented by counsel. The court declared J.T. a deprived child and scheduled a dispositional hearing for December 4, 1996.

¶ 6   In the meantime, the parents were apparently released from custody, but did not maintain a permanent residence. The case worker testified that "I did prepare a treatment plan prior to the December 4th court date [a]nd in a conversation with the parents, I asked them to come in to help me prepare that and never got any response, but I did prepare one." She said she did not have an address or telephone number for the parents, and the "only way I ever had contact with them was if [the mother] contacted me." The case worker testified:

And then November 20th, [the mother] called and asked if she could send money to [J.T.] for her birthday. I said it was okay to send it through us. She said she wanted to visit with [J.T.]. I told her I could set it up and that I needed to meet with her and her husband to discuss a treatment plan. I advised her of the next court date and she said she would talk it over with her husband and get back with me on the day and the time that they would come in. She said she went back to court in December concerning the drug bust that they were involved in.

. . . .

Then on November 25th, the mother . . . called me again and she wanted to visit and she said that her husband wouldn't be able to make it and we set it for 2:00 p.m. on a Wednesday . . . . she came to my office about a little after four o'clock . . . . approximately two hours late.

. . . .

I had left information at my office to call me at her foster placement and that I would bring [J.T.] to the office as soon as the mother got there [but I] never got a phone call.

1.   J.T. was born November 7, 1982.

¶ 7  Neither the parents nor counsel for them appeared at the December 4, 1996, hearing. The Journal Entry of Judgment of Disposition states that "the service plan submitted to the Court this date by the Department of Human Services [is] adopted in full and is therefore an Order of this Court." The court scheduled a review hearing for January 22, 1997. Once again, neither the parent nor counsel for them appeared. The court noted "both parents['] whereabouts are unknown" therefore "[p]ublication notice will be sufficient for next hearing for termination of parental rights."

¶ 8  On January 27, 1997, the State filed a Motion to Terminate Parental Rights. Based upon an assistant district attorney's Affidavit and Application for Order of Publication, stating that "the mailing address, residence or whereabouts" of the parents "cannot, after due diligence be ascertained," the court authorized publication of the Notice of Termination Heari .g, which appeared in the Claremore Daily Progress February 2, 1997. The proceeding to terminate parental rights was set for March 12, 1997. The case worker said the mother "contacted" her March 4 and "[s]he wanted to visit with [J.T.] and I advised her that the court had stopped all visitation and telephone contact. . . ." The case worker also told the mother "that a motion to terminate her parental rights had been filed," and "advised her of the next court date at that time." [2]

¶ 9  The parties convened in court as scheduled March 12. The parents' counsel, who had been retained by them that morning, requested a continuance "to allow me to prepare." In addition, counsel stated: "If a demand for a jury trial has not been made prior to this by the [parents], I would at this time on the record make a demand for a jury trial on the petition to terminate." The trial court denied both motions. The State proceeded to present its evidence. The primary case worker recommended termination of parental rights because:

[J.T.] advised me that she does not want to go back to her parents' home, that she lived in fear while she was in her parents' home and she doesn't want to go back to that lifestyle. The parents have shown minimal interest in her, have made minimal contacts when there has been visitation. The father has never—this is the first time I have ever seen Mr. Trisler. The mother did come to my office for an interview initially and did show up one time late for a visit. I don't feel that that shows a lot of interest on the parents' part.

At the conclusion of the State's case, the trial court overruled the parents' demurrer, and denied their motion for a directed verdict. The parents elected not to present "rebuttal" evidence, and did not personally attend the trial thereafter.

¶ 10  In an order filed April 1, 1997, the trial court terminated the parents' parental rights based upon the following finding:

Parents failed to show conditions corrected and found to be in the best interest of the child for parental rights to be terminated. Parents are to have no contact with [J.T.] or the foster parents.

The parents appeal.

## II

■ ¶ 11  As a preliminary matter, we note the State has elected not to file an answer brief on appeal. Where there is an unexcused failure to file an answer brief, this court is under no duty to search the record for some theory to sustain the trial court's judgment, and where the brief in chief is reasonably supportive of the allegations of error, we will ordinarily reverse the appealed judgment with appropriate directions. *Cooper v. Cooper,* 1980 OK 128, ¶ 6, 616 P.2d 1154, 1156.

¶ 12  Dispositive of this appeal is the parents' contention that the trial court erred as a matter of law in denying their demand for a jury trial. They argue the parental bond is a fundamental, constitutionally protected right affording the right to a jury trial, which

---

2.  The parents concede this information constituted "actual notice" of the scheduled termination proceeding. *See, e.g., Hildebrand v. Harrison,* 1961 OK 97, ¶ 16, 361 P.2d 498, 503("actual

notice consists of direct positive knowledge of the fact in question, or of such information that would be sufficient to put a prudent person on inquiry as to the fact in question.")

can only be waived pursuant to statute. We agree.

¶ 13   Okla. Const., art. 2, § 19 states, in relevant part, that "[t]he right to trial by jury shall be and remain inviolate...." Title 12 O.S.1991, § 591, states:

> The trial by jury may be waived by the parties, in actions arising on contract, and with the assent of the court in other actions, in the following manner: By the consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal.

■■■   ¶ 14   It is fundamental that a parent has a constitutional right to trial by jury in termination of parental rights proceedings.[3]   *A.E. v. State,* 1987 OK 76, 743 P.2d 1041; *In re D.D.F.,* 1990 OK 89, 801 P.2d 703, *cert. denied,* 500 U.S. 922, 111 S.Ct. 2027, 114 L.Ed.2d 113 (1991). The right to trial by jury is to be liberally construed in favor of the party asserting such right. *Seymour v. Swart,* 1985 OK 9, 695 P.2d 509. The right cannot be abrogated arbitrarily by a court but must be surrendered *only* by voluntary consent or waiver. *Id.*

¶ 15   As we have previously stated, on the day of the scheduled trial, after the trial court denied the request of the parents' attorney for a continuance, he stated: "If a demand for jury trial has not been made prior to this by the [parents], I would at this time on the record make a demand for a jury trial on the petition to terminate." The trial court denied the motion, stating:

> This is set for non-jury trial today. The issue here is right to jury trial. You are making a demand for jury trial the morning of a non-jury trial termination hearing.
>
> . . . .
>
> They were served with a notice of termination hearing specifically, which was dated January 28th. They were served with that on February 10th.[4] They were again served by termination notice published on February 2nd. And they come in here this morning asking for a jury trial, asking for a continuance of this nonjury termination hearing with an attorney that has been hired this date.
>
> I find their actions to be dilatory. I find that their motives can only be for purposes of delay in this hearing. And I find that the rights of [J.T.] to a successful completion of this issue of permanency in her life are just as important to the parental rights determination.... I think they have had all of the time in the world to hire an attorney and come in here and be ready for this hearing.
>
> I find that by their silence, by their failure to appear and by their failure to request a jury trial in a timely manner, that their right of jury trial is deemed waived by this court. I must do what I think is best and if you feel the appellate court will decide it differently, they will just have to have a chance to do that....
>
> We have another jury term in May and we can sure put this on the May term of court and you can come in and waive and then it can go on the June term for a non-jury trial. And we can go on to the circular thing here and they can disappear for six more months and we can do another termination notice publication and then we can have another hearing to up [*sic*] September. But I don't think that's right and

---

3.   Okla. Const. art 2, § 19, was amended effective January 13, 1969, to specifically provide for jury trials in "juvenile proceedings." It was not until *A.E. v. State,* 1987 OK 76, 743 P.2d 1041, that existing case law was overruled, and the right to jury trial was recognized to extend to proceedings seeking termination of parental rights. Section 19 was again amended by State Question No. 683, adopted at an election held on August 28, 1990, when specific reference to "juvenile proceedings" was stricken from the constitutional provision. However, the Oklahoma Supreme Court, in *Gray v. Upp,* 1997 OK 98, ¶ 2, 943 P.2d 592, held: "[T]he 1990 Amendment to Oklahoma Constitution, Art. 2, § 19 neither repealed nor negated the right of a parent to be tried by his/her peers in a proceeding to determine whether there shall be a permanent parting of the bonds linking parent to child." Thus the right to trial by jury remains constitutionally protected in proceedings to terminate parental rights.

4.   Contrary to the trial court's statement, no proof of service is contained in the record on appeal.

I don't think that's what that statute was intended nor do I think that's the case law, which I am very familiar with, involving the right of jury trial. This is not something that can be ignored and can be brought in at the last minute. I don't think it exists forever.

I think by their actions, they have waive [*sic*] their right of jury trial.

¶ 16 Section 591 provides the *exclusive* manner in which the right to trial by jury may be waived: *only* by written consent of the party, *or* oral consent, in open court, entered on the journal. "Waiver of this right must be strictly construed, and trial by jury may only be waived in one of the statutory methods." *Jackson v. General Finance Corp.*, 208 Okla. 44, 46, 253 P.2d 166, 168 (1953).[5] The statute does not permit a trial court to hold the right to a jury trial to be "deemed waived" as a result of pre-trial "silence" of a party in demanding their constitutional right *unless* the legislature has enacted a specific period in which demand for a jury trial must be made for that type of legal proceeding.[6]

¶ 17 "If a case under the pleadings filed therein, when measured by the Constitution and the Code of Civil Procedure of this state, is one triable to a jury, *no demand therefor is necessary* by either party." *Adachi v. Bickford*, 135 Okla. 228, 275 P. 306 (1929)(emphasis added). As the Oklahoma Supreme Court stated in *Smith v. Smith*, 80 Okla. 136, 184 P. 82 (1919)(syllabus by the court)(emphasis added):

[W]here the parties to an action make no request for a jury trial at any stage of the trial *or prior to the commencement thereof,* and submit their testimony to the court without a jury, no question of a jury trial having been raised upon the trial of the cause, it is too late for the first time to object [on appeal] that such consent had not been made, and where no request for a jury appears of record, the jury will be considered waived.

*See also Matter of Termination of Parental Rights,* 1993 OK 10, 847 P.2d 768.

¶ 18 Clearly, in this case, the parents made a demand for a jury prior to commencement of the trial, and no waiver of their right to a jury trial appears of record. A defendant is entitled to vacation of judgment in a case triable to a jury when the trial court erroneously placed the matter on a non-jury trial docket. *Adachi,* 135 Okla. at 230, 275 P. at 309.

### III

¶ 19 We hold the trial court erred as a matter of law in setting this termination proceeding for a non-jury trial without the parents' prior written consent to waiver of jury appearing in the record. Consequently, we hold the trial court erred in denying the parents' demand for a jury trial. The cause is reversed and the matter is remanded with directions to grant the parents a new trial.

¶ 20 REVERSED AND REMANDED FOR NEW TRIAL.

TAYLOR, C.J., and, REIF, J. (sitting by designation), concur.

5. After a plaintiff's demand for jury trial has been erroneously denied by the trial court, the fact that the plaintiff went forward in the proceeding does not constitute a waiver of the right to jury trial, *Jackson v. General Finance Corp.*, 208 Okla. 44, 253 P.2d 166 (1953).

6. *See, e.g.,* 12 O.S.1991, § 1148.7 (Forcible Entry and Detainer) ("If neither party demands a jury trial *on or before the day of trial,* the court shall try the cause") (emphasis added); 12 O.S.1991, § 1483 (Occupying Claimant) (demand for jury may be made *any time before return and filing of appraisers' report.*); 17 O.S.1991, § 521 (Oklahoma Brine Development Act) (written demand for jury trial must be filed within 60 days of filing of appraisers' report); 52 O.S.1991, § 318.5 (oil and gas surface damages) (written demand for jury trial must be filed within 60 days of filing of appraisers' report); 66 O.S.1991, § 55 (acquisition of property for railroad use) (written demand for jury trial must be filed within 60 days of filing of commissioners' report); 69 O.S.1991, § 1203 (acquisition of property for use by Oklahoma Department of Public Highways) (written demand must be filed within 60 days of filing of commissioners' report); 69 O.S.1991, § 1708 (condemnation of property for use by Oklahoma Turnpike Authority) (written demand must be filed within 60 days of filing of commissioners' report).