56 P.3d 381 (2002)
2002 OK CIV APP 90
In the Matter of R.S., an alleged deprived child.
Meranda Stephens, Respondent/Appellant,
v.
State of Oklahoma, ex rel. Department of Human Services, Petitioner/Appellee.
No. 97,467.
Court of Civil Appeals of Oklahoma, Division No. 3.
August 23, 2002.
Rita Smith, Fayetteville, AR, for Respondent/Appellant.
Susan Kerr Hopper, Office of Thomas H. May, District Attorney, Jay, OK, for Petitioner/Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
*382 Opinion by CAROL M. HANSEN, Presiding Judge:
¶ 1 In this action concerning R.S., an adjudicated deprived child, Appellant, Meranda Stephens (Mother), appeals from the trial court's judgment terminating her parental rights. We find there is competent evidence supporting the jury's verdict and resultant judgment, and that reversal of the trial court's judgment is not warranted because of ineffective assistance of her counsel at trial. We affirm.
¶ 2 After prevention services by the Department of Human Services (DHS) to keep the family intact were unsuccessful, R.S. was removed from Mother's custody at the age of five weeks and placed in the emergency custody of DHS. Appellee, State of Oklahoma (State), initiated this action by its Petition requesting the trial court find R.S. was a deprived child in accordance with the Oklahoma Children's Code, 10 O.S.2001 §§ 7001-1.1 et seq. R.S. was adjudicated deprived and made a ward of the court by the trial court's order filed on May 1, 2001. The court allowed Mother only supervised visitation.
¶ 3 At the adjudication hearing, Mother stipulated to State's allegations that [1] R.S. had suffered "inappropriate handling" by Mother as a newborn, [2] Mother had a substance abuse problem, [3] R.S. did not have "proper care and guardianship by reason of neglect due to Mother's inability or unwillingness to provided this care due to her mental health condition and her inability to control her anger", and [4] continued placement of R.S. in his own home was contrary to his "health, safety or welfare."
¶ 4 In August 2001, State filed a Petition to terminate Mother's parental rights. State's Petition noted the conditions which led to adjudication of R.S. as a deprived child, and alleged Mother had not corrected those conditions. State cited 10 O.S.2001 § 7006-1.1(A)(5) as authority for termination.
¶ 5 State's Petition for termination was tried to a jury in February 2002. The jury found Mother's parental rights should be terminated and the trial court entered its judgment from that verdict. The court's judgment was consistent with the allegations contained in State's Petition and was based on the same statutory authority.
¶ 6 Mother brings this appeal from the trial court's judgment terminating her parental rights. In the trial court State must prove termination is justified by clear *383 and convincing evidence. In the Matter of A.D.W., 2000 OK CIV APP 110, 12 P.3d 972. However, on appellate review, the findings of the trial court, entered on a jury verdict, must be affirmed if there is any evidence tending to support them. In re T.E.B, 2001 OK CIV APP 70, 24 P.3d 900.
¶ 7 Mother's first allegation of trial court error is that State "failed to satisfy the statutory criteria for termination pursuant to 10 O.S. § 7006-1.1". More specifically, Mother's contention is that State, having alleged, inter alia, that R.S. did not have proper care and guardianship by reason of neglect due, in part, to Mother's "mental health condition", was required to satisfy 10 O.S.2001 § 7006-1.1(A)(13).
¶ 8 Section 7006-1.1(A)(13) authorizes termination of parental rights where, in pertinent part:
...,
c. the parent whose rights are sought to be terminated has a mental illness or mental deficiency, as defined by Section 6-201 of Title 43A of the Oklahoma Statutes, which renders the parent incapable of adequately and appropriately exercising parental rights, duties and responsibilities,...
¶ 9 Section 6-201 of Title 43A defines mental illness as "mental disease to such extent that a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community." That section defines mental deficiency as that "defined by appropriate clinical authorities to such extent that a person so afflicted is incapable of managing himself and his affairs, but shall not include mental illness as defined herein."
¶ 10 Mother cites Matter of L.S., 1990 OK CIV APP 94, 805 P.2d 120, in support of her contention State must satisfy § 7006-1.1(A)(13). In Matter of L.S., the Court of Appeals found fundamental error in State's failure to allege and prove termination was justified in accordance with the statutory predecessor to § 7006-1.1(A)(13). There, the Court, whose holding was driven by the particular facts of the case, noted:
The evidence below is replete with references to mother's "retardation" and other severe developmental handicaps as well as the father's "borderline intelligence", "organic brain injury", "serious personality problems" and "seizure disorder" with the possibility of treatment and control by medication.... By the state's own admission the parents are "handicapped" and have mental "inabilities."
¶ 11 Without deciding whether the holding in Matter of L.S. was otherwise correct, we find the facts before us are distinguishable. First, State asserted Mother's parental rights should be terminated because she failed to show she corrected the conditions which led to R.S. being adjudicated deprived, which included her inability or unwillingness to provide proper care due to her mental health condition and inability to control her anger. This is not an allegation that Mother's parental rights should be terminated because she has a mental illness or mental deficiency within the meaning of § 7006-1.1(A)(13). If that were State's intention, it would have used the requisite statutory term.
¶ 12 Further, the evidence here is much different than that in Matter of L.S. State's expert witness testified regarding his psychological testing of Mother. He stated her cognitive capacity was low average, not mentally retarded and not borderline intellectual functioning. He further testified Mother was "bright enough to function day to day", that he "saw no form of mental illness or intellectual deficit that would incapacitate her to the extent she would be unable" to complete the treatment plan, and that his evaluation did not indicate anything which would prevent Mother from completing such things as parenting classes, anger management classes, visiting and acting appropriately with R.S., getting a job, paying child support or establishing a stable home.
¶ 13 While State's expert did diagnose personality disorders which could benefit from counseling and enlistment in other support services, we find nothing in his testimony which would raise the issue of mental illness or mental deficiency as those conditions are relevantly defined. It was not error for the trial court to enter judgment without making *384 findings in accordance with § 7006-1.1(A)(13).
¶ 14 Mother's sole allegation of substantive error as to the court's judgment was the court's "failure to satisfy the specific statutory criteria of 10 O.S. § 7006-1.1(A)(13)." She therefore implicitly concedes the trial court's judgment was otherwise supported by competent evidence of record. In re T.E.B, 24 P.3d at 902. Without reciting the evidence, we have reviewed the record and find it sufficient to support the trial court's findings that Mother failed to show she had corrected the conditions which led to R.S. being adjudicated deprived and that it was in the best interests of R.S. that Mother's parental rights be terminated. 10 O.S.2001 § 7006-1.1(A)(5).
¶ 15 As her second appellate proposition, Mother contends her trial attorney's representation was so deficient as to constitute ineffective assistance of counsel. In Matter of D.D.F., 1990 OK 89, 801 P.2d 703, the Supreme Court reiterated its holding that one who may be deprived of parental rights has a right to counsel, and further held such right is the right to effective representation of counsel. There the Court noted "[t]he right to counsel would be of no consequence if such counsel were not required to represent the parent in a manner consistent with an objective standard of reasonableness."
¶ 16 The Court of Civil Appeals adopted more definitive standards for determining the effectiveness of counsel in In Re K.L.C., 2000 OK CIV APP 98, 12 P.3d 478. Noting the absence of right to counsel in most civil proceedings, the Court of Civil Appeals looked to criminal law.[1] To require reversal, a criminal defendant's claim of ineffective representation must show [1] the attorney's performance was deficient, and [2] the deficient performance prejudiced the defense. Id., at 480, 12 P.3d 478 citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 17 The Strickland Court held representation was deficient if counsel's performance fell outside the broad range of professionally acceptable performance, and that the defense was prejudiced if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Our scrutiny of counsel's performance must be highly deferential. Strickland v. Washington, at 689, 104 S.Ct. at 2065.
¶ 18 Whether there has been ineffective assistance of counsel must be determined from examination of the proceedings as a whole. Id., at 690, 104 S.Ct. at 2066. There is a strong presumption that counsel's performance falls within the "wide range" of professional assistance. Id., at 689, 104 S.Ct. at 2065. We note here, while acknowledging each case must be decided on its own merits, that the courts in each of the cases cited by Mother in support of this contention found counsel's performance not to be deficient.
¶ 19 Mother asserts her trial attorney "arguably committed several egregious errors that prejudiced" her defense. These included allowing one of State's witnesses to testify regarding "highly sexualized behavior" exhibited by Mother towards R.S. This behavior had been documented in Mother's DHS case file, but Mother's trial attorney had not requested access to the file through discovery. Mother argues her defense was prejudiced because her attorney objected to this testimony only after it was completed, and then moved for a mistrial on the ground the testimony was an "evidentiary harpoon" and was not alleged in the treatment plan.
¶ 20 The trial court did deny Mother's motion for a mistrial in part because there was no objection at the time the testimony was being given, but also found it was nonetheless probative of the allegation that Mother stipulated to regarding inappropriate handling of R.S. as a newborn. We agree the testimony is relevant to that issue and would have been properly admitted for that reason. It is evident the testimony would have been admitted even over timely objection by Mother's trial counsel. While it may have been *385 better practice for Mother's trial counsel to have raised the objection in controversy, we do not find that failure affected the outcome of the proceedings.
¶ 21 Another error Mother asserts to document counsel's alleged deficiency was the failure to ensure the presence of a witness through whom a purportedly favorable exhibit could have been admitted. Mother was not allowed to admit the document, a case report, through a previous caseworker because the caseworker had not prepared the report. The absent caseworker, who was ill at the time of trial, was on two witness lists and Mother's trial counsel told the court he had anticipated her being in court. Mother's request for a continuance to obtain the presence of the preparing caseworker was, however, denied when the trial court was informed it was State, not Mother, who had endorsed and subpoenaed the witness.
¶ 22 This professional omission is similar to one of the alleged deficiencies in In re K.L.C. There the trial attorney did not file a witness list, but opted to use the other parties' witness lists. All but one of the witnesses not on those lists appeared voluntarily. While not commenting specifically, the K.L.C. Court did not find the attorney's decision beyond the range of professionally acceptable performance. Further, viewing the content of the report which was not admitted in light of the totality of the evidence, we find it improbable that it would have materially affected the outcome.
¶ 23 Review of the record reflects Mother's trial counsel was actively involved in the case before and during trial. He successfully prosecuted a motion in limine to prevent certain police reports from being introduced. He raised other pretrial issues regarding Mother's psychological evaluation and medical records and references to the ethnicity of Mother's boyfriends. He endorsed and called other witnesses, including Mother herself, on her behalf. He actively cross-examined State's witnesses and raised other appropriate objections. He, in fact, did object, although somewhat misdirected and tardy, to the witness who testified regarding Mother's "sexualized" behavior. He continued to argue this objection and moved for a mistrial.
¶ 24 Examining the proceedings as a whole, and in consideration of the presumption that counsel's conduct on Mother's behalf falls within the wide range of professional performance, we cannot say Mother's trial counsel's representation was so deficient that she met her burden of proving ineffective assistance of counsel. In re K.L.C., 12 P.3d at 482.
¶ 25 The trial court's judgment terminating Mother's parental rights is AFFIRMED.
ADAMS, J., and MITCHELL, J., concur.
NOTES
[1] For a comprehensive survey of what states have held those facing loss of parental rights are entitled to effective representation of counsel, and the standards for determining that question, See, L.W. v. Dept. of Children and Families, 812 So.2d 551 (Fla.2002).