2015 OK CIV APP 24

**In the Matter of N.L., an Alleged Deprived Child,**

**Tracy Seal, Appellant,**

v.

**The State of Oklahoma, Appellee.**

**No. 111,854.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 12, 2014.

Certiorari Denied March 9, 2015.

Joe K. White, Duncan, Oklahoma, for Appellant.

Jason M. Hicks, District Attorney (6th District), Amanda Mullins, Assistant District Attorney, Chickasha, Oklahoma, for Appellee.

KEITH RAPP, Judge.

¶ 1 Tracy Seal (Mother) appeals a judgment entered in a nonjury trial conducted on the motion of the State of Oklahoma (State) to terminate her parental rights to her child, N.L.[1]

## BACKGROUND

¶ 2 This action was tried as a nonjury case. The court previously adjudicated N.L. as a deprived child, placed him in the custody of the Department of Human Services (DHS) and then foster care.

---

1. In the initial trial court proceedings and journal entry, Mother is named "Tracy Levalley." The petition to terminate her rights, the trial and the appeal papers name her "Tracy Seal." Tracy Levalley and Tracy Seal are the same person.

¶ 3 The State's evidence showed that Mother had been provided an Individualized Service Plan (ISP) giving her instructions and conditions. According to DHS records, Mother had completed only one of the ISP requirements and more than ninety days had passed since the date of the ISP. In addition, Mother had not visited N.L. for just over two years and had made no effort to contact N.L. by telephone or mail. The DHS witness testified that N.L.'s best interest would be served by termination of Mother's parental rights.[2]

¶ 4 The foster parent testified that she would have facilitated contact between Mother and N.L. She confirmed that Mother had not made any contact.

¶ 5 Mother testified and stated that she had a seventh grade education. In her testimony, Mother generally admitted that she had not completed all of the plan conditions and acknowledged that she was aware of what conditions were required. She agreed that she had not visited or contacted N.L. for just over two years and that she knew how to do so through DHS. Mother acknowledged that she made no financial contribution to support N.L.

¶ 6 Mother claimed that Texas authorities had denied her visitation in a previous case and that DHS also denied her visitation, but the latter was not documented.[3] In response to questions from the court, Mother acknowledged that she could bring concerns to the court and that she had failed to attend three review settings.[4]

¶ 7 One of the conditions not fulfilled required Mother to obtain domestic violence counseling. Mother agreed that she had not done so, but explained that she had received the counseling as a condition of an earlier proceeding in Texas. Mother stated that a prior DHS caseworker had told her that the prior counseling would meet the condition. However, she acknowledged that her plan from DHS called for counseling.

¶ 8 Mother admitted to several residences over time, but said that she had a home now and was living with her fiancé Mother also said she had employment as a babysitter paying $175.00 per week, but she also agreed that she had not reported the employment to DHS as required.

¶ 9 The trial court ruled that the State had proven by clear and convincing evidence that Mother had failed to correct conditions that caused N.L. to be adjudicated deprived and made specific findings supporting that ruling. The court also ruled that termination of Mother's parental rights was in N.L.'s best interest.

¶ 10 Mother appeals.

## STANDARD OF REVIEW

¶ 11 The appellate court in a termination of parental rights case must be satisfied, after review of the record, that the State has met its burden of proof by the presence of clear and convincing evidence to support the verdict and judgment. *In re S.B.C.*, 2002 OK 83, 64 P.3d 1080. Clear and convincing evidence means that the jury, and this Court on appeal, considering all the evidence in the case, must be persuaded that the proposition on which the party has the burden of proof is highly probable and free from serious doubt. *In re K.C.*, 2002 OK CIV APP 58, ¶ 5, 46 P.3d 1289, 1291 (citing *In re C.G.*, 1981 OK 131, ¶ 17 n. 12, 637 P.2d 66, 71 n. 12.)

¶ 12 If a fundamental constitutional right is violated in a proceeding to terminate parental rights, it is the duty of the appellate court to raise the issue *sua sponte*. *In re S.S.*, 2004 OK CIV APP 33, ¶ 7, 90 P.3d 571, 574–75 (mother's counsel absent for part of trial and Court reversed termination).

## ANALYSIS AND REVIEW

¶ 13 The evidence in the trial of this case established that Mother had failed to

---

2. The father's parental rights were terminated in a separate proceeding.

3. The ISP specifically advises Mother of her obligation to visit and the right to visit. Record, p. 15, at 21, 25.

4. Tr. pp. 57–59.

correct conditions that caused N.L. to be adjudicated deprived. Mother admitted most of the allegations and the trial court did not find her explanations sufficient. Likewise, the evidence presented supported the trial court's ruling that termination of Mother's parental rights was in N.L.'s best interest.

¶ 14 However, this Court's inquiry does not stop there. After hearing and ruling on Mother's waiver of a jury and after announcing appearances for the State and Mother, the trial court said:

> The child's attorney, Mr. Lawrence Wheeler, had another commitment this morning in another courtroom. He gave the court specific permission to begin the proceedings without him. He will join us as soon as he's freed up. Is there any objection from either side as to that?[5]

¶ 15 Counsel for Mother and for State each stated that they had no objection. The cause began. However, the transcript does not show that N.L.'s counsel ever appeared. The trial court's concluding remarks, after the State and Mother rested, addressed only the State and Mother, thus indicating that N.L.'s attorney was not present. The transcript reflects that the N.L.'s attorney did not examine or cross-examine any witnesses or present a closing argument.

¶ 16 The issue, raised by this Court, is whether a fundamental constitutional right of N.L. was violated in this proceeding to terminate Mother's parental rights. Specifically, the questions are whether N.L.'s right to be represented by an attorney is accompanied by a right to effective assistance of counsel, and, if so, has N.L. been deprived of the right to effective assistance of counsel.[6]

■ ¶ 17 First, this Court holds that a child in a parental rights termination proceeding has a constitutional right to effective assistance of counsel. In reaching this hold-

ing, this Court applies to this case the Court's holding in the case of *In re D.D.F.*, 1990 OK 89, ¶ 15, 801 P.2d 703, 707 (parent's right to counsel is the right to effective assistance of counsel), as well as the rule in the case of *In re S.S.*, 2004 OK CIV APP 33 at ¶ 10, 90 P.3d at 575 (parent's right to counsel would be meaningless absent right to effective assistance of counsel).

> Taking into consideration both the constitutional and statutory requirements that counsel be provided, we must also agree with Mr. F. that the right to counsel is the right to effective assistance of counsel. The right to counsel would be of no consequence if such counsel were not required to represent the parent in a manner consistent with an objective standard of reasonableness.

*In re D.D.F.*, 1990 OK 89 at ¶ 15, 801 P.2d at 707 (citation omitted).

■ ¶ 18 Next, this Court joins with decisions from other divisions of the Court of Civil Appeals holding that the standard for determining the effectiveness of counsel in termination proceedings is the standard used in criminal trials. *In re A.F.K.*, 2014 OK CIV APP 6, ¶ 35, 317 P.3d 221, 229; *In re S.S.*, 2004 OK CIV APP 33 at ¶ 10, 90 P.3d at 575; *In re R.S.*, 2002 OK CIV APP 90, ¶ 16, 56 P.3d 381, 384; *In re K.L.C.*, 2000 OK CIV APP 98, ¶ 7, 12 P.3d 478, 480. This standard was adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[7]

■ ¶ 19 A determination of whether counsel's representation is ineffective begins with the strong presumption of effective assistance of counsel. However, the actual *or constructive* denial of assistance of counsel is legally presumed to be prejudicial. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Where a party has counsel and the counsel takes no action, the result is a constructive denial of effective assistance of counsel.

---

5. Tr., p. 8.

6. The right to counsel was recognized by the Court in the case of *In re T.M.H.*, 1980 OK 92, ¶ 7, 613 P.2d 468, 470–71. The current statute continues that right. 10A O.S.2011, § 1-4-306(A)(2). The trial court appointed counsel to represent N.L.

7. For a discussion of *Strickland* and effective assistance of counsel in civil cases under the Children's Code, *see* Paula D. Wood & Rick Goralewicz, *Strickland's Children*, 85 OBJ 1677 (August 9, 2014).

*Young v. State,* 1994 OK CR 84, ¶ 9, 902 P.2d 1089, 1090–91; *In re A.F.K.,* 2014 OK CIV APP 6, n. 9, 317 P.3d 221 n. 9; *In re K.L.C.,* 2000 OK CIV APP 98 at ¶ 14, 12 P.3d at 482.

¶ 20 The statute, 10A O.S.2011, § 1–4–306(A)(2), outlines the duties of appointed counsel.[8] The District Court record before this Court does not show that appointed counsel contacted N.L. or the foster parent or substituted his judgment as to N.L.'s interests using the objective criteria enumerated in the statute. Moreover, the District Court record does not reflect "good cause shown" for not meeting with N.L. prior to trial.

¶ 21 In addition, the District Court record does not show what "further inquiry" was undertaken to ascertain the facts and prepare for a trial. Although the statute provides flexibility by modifying "further inquiry" with "deems necessary," such modification does not permit a total absence of inquiry.[9] Here, the Appellate Record fails to contain any information regarding counsel's "further inquiry" actions, so it is not possible to determine whether the representation was effective at this stage.

¶ 22 Other than counsel's appearance at the review hearings, the District Court record does not reflect any reports to the court,

> (1) a determination of the circumstances of the child through a full and efficient investigation,
> (2) assessment of the child at the moment of the determination,
> (3) examination of all options in light of the permanency plans available to the child, and
> (4) utilization of medical, mental health and educational professionals, social workers and other related experts.
> The attorney *shall make such further inquiry* as the attorney deems necessary to ascertain the facts, to interview witnesses, *examine and cross-examine witnesses, make recommendations to the court and participate further in the proceedings to the degree appropriate for adequately representing the interests of the child.* A child is a party to all *deprived* proceedings and is therefore able to participate as fully as the parents and the *district attorney* in all aspects of the proceedings including, but not limited to, voir dire, *cross examination, the subpoena of witnesses, and opening and closing statements.* (Emphasis added.)

---

8. Section 1–4–306(A)(2) provides:

 2. a. The court may appoint an attorney or a guardian ad litem for the child when an emergency custody hearing is held; provided, that when a petition is filed alleging the child to be deprived, the court shall appoint a separate attorney for the child, who shall not be a district attorney, regardless of any attempted waiver by the parent, legal guardian or custodian of the child of the right of the child to be represented by counsel. The child's attorney shall be independent of and not selected by the district attorney, the child's parent, legal guardian, or custodian. If financially capable, the parent, legal guardian or custodian shall reimburse the Court Fund for the services of a court-appointed attorney for the child.
 b. The attorney appointed for the child shall make arrangements to meet with the child as soon as possible after receiving notification of the appointment. Except for good cause shown, the attorney shall meet with the child prior to any hearing in such proceeding. The attorney may speak with the child over the telephone if a personal visit is not possible due to exigent circumstances. If a meaningful attorney-client relationship between the child and the attorney is prohibited due to age or disability of the child, the attorney shall contact the custodian or caretaker of the child prior to the hearing.
 c. The attorney shall represent the child and any expressed interests of the child. To the extent that a child is unable to express an interest, either because the child is preverbal, very young or for any reason is incapable of judgment and meaningful communication, the attorney shall substitute his or her judgment for that of the child and *formulate and present a position which serves the best interests of the child.* Such formulation must be accomplished through the use of objective criteria rather than solely the life experience or instinct of the attorney. The objective criteria shall include, but not be limited to:

9. Counsel for N.L. also did not appear in this appeal, thereby prompting this Court to direct counsel to comply with the Appellate Rules. Counsel responded and adopted the Brief filed by the State and stated that his opinion was that the best interest of N.L. was served by upholding the trial court. Counsel further declined to enter an appearance stating:

 (The statute) does not require the children's attorney to enter an appearance or submit briefings in any appellate matter on behalf of the minor child. This statute only gives the minor child's attorney the opportunity to do so if said attorney "deems [it] necessary". I do not deem it necessary to enter an appearance on behalf of the minor child in this matter nor do I deem it necessary to file any briefings in same.
 This Court entered an Order finding that the response and adoption of the State's Brief satisfied counsel's appellate responsibility under Section 1–4–306(A)(2).

any recommendations to the court, or any expressions of what the interests of N.L. might be. As shown above, according to the Record, appointed counsel was absent from the trial of the case.

¶ 23 The Oklahoma Rules of Professional Conduct, Rule 1.1, 5 O.S.2011, ch. 1, app. 3–A, and accompanying commentary succinctly provide instructive standards.

Rule 1.1. Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

¶ 24 The authors of *Strickland's Children,* 85 OBJ 1677 (August 9, 2014), cite from performance standards and guidelines issued by the Committee for Public Counsel Services, a Massachusetts agency. The Performance Standards Governing the Representation of Children and Parents in Child Welfare Cases are instructive here.[10] In part the Standards provide:

1. GENERAL PRINCIPLES OF REPRESENTATION

1.1 Role of Counsel.

(a) The role of counsel in these cases is to be an advocate for the client within the scope of counsel's appointment. Counsel shall diligently and zealously protect and advance the client's interests, rights and goals in the proceedings. This involves explaining the nature of all legal and administrative proceedings to the extent possible given the client's age and ability, determining the client's position and goals, and vigorously advocating such position and goals The role of counsel is also to ensure that the client is afforded due process and other rights and that the client's interests are protected.

(b) The role of counsel also is to be an advisor and counselor. This involves explaining the likelihood of achieving the client's goals and, where appropriate, identifying alternatives for the client's consideration. In addition, counsel should explain the risks, if any, inherent in the client's position.

(c) Counsel has an obligation to make available sufficient time, resources, knowledge and experience to afford competent representation to the client.

(d) Counsel for a child owes the same duties of undivided loyalty, confidentiality, zealous advocacy and competent representation to the child as is due an adult client, consistent with the Massachusetts Rules of Professional Conduct.

Commentary: The child's counsel should not be merely a fact-finder, but rather, should zealously advocate a position on behalf of the child. Regardless of any alignment of position among the child and other parties, child's counsel should develop his or her own theory and strategy of the case and ensure that the child has an independent voice in the proceedings. Although the child's position may overlap with the position of one or both parents, third-party caretakers or the Department of Social Services ("DSS"), child's counsel should be prepared to present his or her client's position independently and to participate fully in any proceedings.

¶ 25 The circumstances here are not as in *David S. v. State,* 270 P.3d 767, 786 (Alaska 2012), where the father "did not show how an improved or more aggressive performance would have made a difference in the outcome of his case." There, counsel actively participated in the case, although the trial court criticized the participation as substandard.

 ¶ 26 "The right to counsel would be of no consequence if such counsel were not required to represent the parent in a manner consistent with an objective standard of reasonableness." *In re D.D.F.,* 1990 OK 89 at ¶ 15, 801 P.2d at 707. "The rule is that when an attorney takes no action on behalf of his client, there is a legal presumption of prejudice." *In re K.L.C.,* 2000 OK CIV APP 98 at ¶ 15, 12 P.3d at 482 (citing *Young v. State,* 1994 OK CR 84, 902 P.2d 1089).

---

10. Source: Committee for Public Counsel Services, Children and Family Law Division; *Performance Standards CAFL Attorneys,* www.publiccounsel.net.

¶ 27 The phrase "deems necessary" found in 10A O.S.2011, § 1–4–306(A)(2)(c) pertains to the duty of counsel to "make such further inquiry" "to ascertain the facts." The phrase does not provide a basis to excuse appointed counsel from his or her duty as an advocate, otherwise the next full sentence would be meaningless.[11] The statute contemplates and requires a participating attorney. The child's right to effective assistance of counsel requires the same standard. Here, the Record shows a complete absence of advocacy for N.L. in the trial court.[12]

¶ 28 This Court holds that, under the Record, the right of N.L. to effective assistance of counsel has been denied. This means that the judgment must be reversed and the cause remanded for a new trial. On remand, the trial court is free to apportion the costs of the retrial as appropriate.

¶ 29 REVERSED AND REMANDED FOR A NEW TRIAL.

FISCHER, P.J., concurs, and THORNBRUGH, J., specially concurs.

THORNBRUGH, J., concurring specially.

¶ 1 I concur specially to underscore that a child is constitutionally entitled to representation at a termination hearing. A proceeding to terminate parental rights is just as important to the child as to the parent. An absent attorney is no attorney at all, and utterly fails to provide the child with the statutory and constitutional protections required. This holding is consistent with the mandate of 10A O.S.2011 § 1–4–306(A)(5), that "[t]he court shall ensure that the child is represented by independent counsel throughout the pendency of the deprived action."

---

11. Section 1–4–306(4)(2) further provides:
 A child is a party to all deprived proceedings and is therefore able to participate as fully as the parents and the district attorney in all aspects of the proceedings including, but not limited to, voir dire, cross examination, the subpoena of witnesses, and opening and closing statements.

